Kevin L. Vick (SBN: 220738)
kvick@jassyvick.com
Nicholas R. Hartmann (SBN: 301049)
nhartmann@jassyvick.com
**Jassy Vick Carolan LLP**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (310) 870-7048
Facsimile: (310) 870-7010

Steven P. Mandell (IL SBN 6183729)
*Admitted Pro Hac Vice*
smandell@mandellmenkes.com
Brian D. Saucier (IL SBN 6226006)
*Admitted Pro Hac Vice*
bsaucier@mandellmenkes.com
**Mandell Menkes LLC**
One North Franklin, Suite 900
Chicago, IL 60606
Telephone: 312.251.1000
Facsimile: 312.251.1010

Attorneys for Defendant Music Together, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Justine Chadly,<br><br>                Plaintiff,<br><br>     v.<br><br>Music Together, LLC; and Does 1-25, inclusive,<br><br>                Defendants. | Case No.: 3:24-cv-1096-WHA<br><br>**DEFENDANT/COUNTER-PLAINTIFF MUSIC TOGETHER, LLC'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: September 25, 2025<br>Time: 8:00 a.m.<br>Place: Courtroom 12, 19th Floor<br><br>Honorable Judge William H. Alsup |

## <u>TABLE OF CONTENTS</u>

**NOTICE OF MOTION AND MOTION** .................................................................................... **VI**

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................................. **1**

**STATEMENT OF ISSUES TO BE DECIDED** ....................................................................... **1**

**INTRODUCTION** ....................................................................................................................... **1**

**FACTUAL BACKGROUND** ...................................................................................................... **2**

**LEGAL STANDARD** ................................................................................................................. **6**

**ARGUMENT** ............................................................................................................................... **6**

I.     **MUSIC TOGETHER OWNS THE COPYRIGHT TO SINGING IN HARMONY AND IS ENTITLED TO SUMMARY JUDGMENT ON COUNTERCLAIM I AND COUNTERCLAIMS V AND VI AND CHADLY'S COUNTS I, VI AND VII AS THEY RELATE TO SINGING IN HARMONY** .............................................................................. **6**

II.    **MUSIC TOGETHER IS ENTITLED TO SUMMARY JUDGMENT ON ITS COUNTERCLAIM FOR BREACH OF LICENSE BECAUSE PLAINTIFF VIOLATED THE TERMS OF HER AGREEMENT AND REFUSED TO PAY THE AMOUNT OWED FOR THE SUMMER 2023 SEMESTER** .............................................................................................. **9**

III.    **MUSIC TOGETHER IS ENTITLED TO SUMMARY JUDGMENT ON CHADLY'S CLAIMS FOR COPYRIGHT INFRINGEMENT OF THE ADDITIONAL SONGS AND HER CLAIMS FOR ACCOUNTING AND DECLARATORY RELIEF** ....................................... **10**

IV.    **MUSIC TOGETHER IS ENTITLED TO SUMMARY JUDGMENT ON CHADLY'S CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACT BECAUSE THERE WAS NO BREACH OF CONTRACT** ............................................................................................... **12**

V.     **CHADLY CANNOT SUCCEED ON A CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ADVANTAGE** ........................ **14**

     A.     Chadly did not have a sufficient economic relationship with Mr. Foote to establish the first element of tortious interference with prospective economic advantage ............................... **15**

     B.     Music Together did not commit an independent wrongful act because it did not violate any statute, ordinance, or other source of legal authority in exercising its discretion when choosing not to award a license to Mr. Foote. ................................ **17**

VI.    **MUSIC TOGETHER IS NOT LIABLE FOR UNFAIR COMPETITION BECAUSE ITS ACTIONS DID NOT VIOLATE ANY ANTITRUST LAWS OR THE SPIRIT OF ANY PUBLIC POLICY GOALS RELATED TO BUSINESS COMPETITION** ............................................................ **18**

i

DEFENDANT/COUNTER-PLAINTIFF MUSIC TOGETHER, LLC'S NOTICE OF MOTION AND MOTION
FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
3:24-cv-1096-WHA

**VII.    MUSIC TOGETHER IS ENTITLED TO SUMMARY JUDGMENT ON CHADLY'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BECAUSE MUSIC TOGETHER DID NOT ENGAGE IN ANY EXTREME OR OUTRAGEOUS CONDUCT ...............20**

    A.    Music Together's conduct was not extreme and outrageous. ...................20

    B.    Music Together's actions were not the actual and proximate cause of Plaintiff's emotional distress....................................................................22

**CONCLUSION.............................................................................................................23**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................................... 6

*Buckaloo v. Johnson*,
    14 Cal. 3d 815 (1975) ......................................................................................................... 14

*Bushnell v. JP Morgan Chase Bank, N.A.*,
    220 Cal. App. 4th 915 (2013) .............................................................................................. 9

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104 (1986) ............................................................................................................. 19

*Carmichael Lodge No. 2103 v. Leonard*,
    No. Civ. S-07-2665 ............................................................................................................... 11

*Carson v. Dynegy, Inc.*,
    344 F.3d 446 (5th Cir. 2003) ............................................................................................... 11

*Cel-Tech Commc'ns, Inc. v Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ......................................................................................................... 19

*Celotex Corp. v. Cattrett*,
    477 U.S. 317 (1986) ............................................................................................................... 6

*Cochran v. Cochran*,
    65 Cal. App. 4th 488 (2nd Dist. 1998) .......................................................................... 20, 22

*Crown Imps., LLC v. Superior Court*,
    223 Cal. App. 4th 1395 ........................................................................................................ 17

*Davis v. Ford Motor Credit Co. LLC*,
    179 Cal. App. 4th 581 (2nd Dist. 2009) .............................................................................. 18

*Davis v. Nadrich*,
    174 Cal. App. 4th 1 (2009) ............................................................................................ 12, 13

*DeCarlo v. Archie Comic Publ'ns, Inc.*,
    127 F. Supp. 2d 497 (S.D.N.Y. 2001) ................................................................................ 11

*Della Penna v. Toyota Motor Sales, U.S.A.*,
    11 Cal. 4th 376 (1995) ......................................................................................................... 15

*Drum v. San Fernando Valley Bar Assn.*,
    182 Cal. App. 4th ........................................................................................................... 18, 19

*Fletcher v. W. Nat'l Life Ins. Co.*,
  10 Cal. App. 3d 376 (4th Dist. 1970) ..................................................................... 20

*Fowler v. Varian Assocs.*,
  196 Cal. App. 3d 34 (6th Dist. 1987) ..................................................................... 20

*Granite State Ins. Comp. v. Smart Modular Techs., Inc.*,
  76 F.3d 1023 (9th Cir. 1996) .................................................................................. 10

*Gray v. Hudson*,
  28 F.4th 87 (9th Cir. 2022) ....................................................................................... 8

*Koerber v. Project Veritas*,
  BC649878, 2019 Cal. Super. LEXIS 96220 (Cal. Super. Ct. May 13, 2019) ........... 15, 16

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ..................................................................................... 15, 17

*Kruse v. Bank of America*,
  202 Cal. App. 3d 38 (1st Dist. 1988) ..................................................................... 21

*Moncada v. W. Coast Quartz Corp.*,
  221 Cal. App. 4th 768 (6th Dist. 2013) .................................................................. 13

*Peer Int'l Corp. v. Pausa Records, Inc.*,
  909 F.2d 1332 (9th Cir. 1990) .............................................................................. 8, 9

*Quinn v. City of Detroit*,
  23 F. Supp. 2d 741 (E.D. Mich. 1998) .................................................................... 11

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*
  2 Cal. 5th 505 (2017) ............................................................................................. 15

*Schertzer v. Bank of Am., NA*,
  109 F.4th 1200 (9th Cir. 2024) ................................................................................ 7

*Settimo Assocs. v. Environ Sys., Inc.*,
  14 Cal. App. 4th 842 (4th 1993) ............................................................................ 15

*Taylor Holland LLC v. MVMT Watches, Inc.*,
  No. 2:15-cv-03578-SVW-JC (C.D. Cal. Aug. 11, 2016) ......................................... 10

*Trerice v. Blue Cross of Cal.*,
  209 Cal. App. 3d 878 (1st Dist. 1989) ....................................................... 20, 21, 22

**Statutes**

17 U.S.C. § 204 .......................................................................................................... 7

Bus. & Prof. Code, § 25000.9 .................................................................................. 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cal. Code Civ. Proc. § 335.1..................................................................................................22

Copyright Act........................................................................................................................7

Foreign Corrupt Practices Act.............................................................................................17

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on September 25, 2025 at 8:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable William H. Alsup, Courtroom 12, 19th Floor, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, Defendant/Counter-Plaintiff Music Together, LLC ("Music Together") will and hereby does move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting summary judgment in its favor on all counts asserted by Plaintiff/Counter-Defendant Justine Chadly ("Chadly") in her Complaint. ECF No. 1. Music Together also moves for an order granting partial summary judgment in its favor on Counts I, V, and VI as those counts relate to the song Singing In Harmony, and Count III of Music Together's Counterclaim. ECF No. 45.

The Motion should be granted, and summary judgment entered in Music Together's favor on Chadly's claims, because: (i) Chadly sold the copyright in Singing In Harmony to Music Together; (ii) Chadly cannot show any wrongful conduct by Music Together that caused a breach of any contract or interfered with any prospective advantage; (iii) Chadly cannot show any wrongful conduct by Music Together in violation of Cal. Bus. & Prof. Code 17200; (iv) Chadly cannot show any extreme or outrageous conduct by Music Together supporting her claim for intentional infliction of emotional distress; and (v) Chadly cannot assert claims for copyright infringement, accounting, or declaratory judgement relating to any songs because (a) she represented (or stood by silently to allow her fiancé, Tom Foote, to represent) that Foote was a co-author of the songs and (b) Music Together relied on Foote's status as a co-author and his transfer of ownership of his rights as a co-author in using the songs.

The Motion should be granted, and partial summary judgment entered in Music Together's favor on Counterclaim Counts I, V, and VI because Chadly sold the copyright to Singing in Harmony to Music Together and then continued to use the song in her competing business after terminating her Music Together license. Music Together is also entitled to summary judgment on Counterclaim Count III for breach of contract for Chadly's failure to pay service fees during the summer 2023 semester during which she used Music Together's songs

and curriculum.

This Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, all exhibits submitted in support of the Memorandum, the complete files and records in this action, and any and all argument and evidence as may be presented before or at the hearing.

1

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF ISSUES TO BE DECIDED**

3      1.      Did Chadly sell the copyright in the song Singing In Harmony to Music Together

4  pursuant to a Song Purchase Agreement and then use the song after her license with Music

5  Together was terminated?

6      2.      Did Music Together engage in conduct that interfered with Chadly's contracts

7  with teachers or customers?

8      3.      Did Music Together engage in wrongful conduct that interfered with Chadly's

9  prospective economic advantage relating to the sale of her business to her fiancé Foote?

10     4.      Did Music Together engage in conduct constituting unfair competition in

11  violation of Cal. Bus. & Prof. Code 17200?

12     5.      Did Music Together engage in extreme and outrageous conduct towards Chadly?

13     6.      Did Chadly breach her license agreement with Music Together by failing to pay

14  service fees for the summer 2023 semester?

15                    **INTRODUCTION**

16          Music Together licenses its proprietary music and movement education program for

17  young children and their parents and caregivers throughout the country. Justine Chadly is a

18  former licensee of Music Together who terminated her license in the summer of 2023 to start her

19  own competing music program. Chadly's break from Music Together was not a clean one –

20  apparently lacking any real plan for her own business, she instead continued to surreptitiously

21  use Music Together's curriculum and intellectual property, all without paying the service fees

22  she was required to pay under her license from Music Together.

23          When Music Together discovered Chadly's breach and sent her an invoice for the service

24  fees, Chadly responded by filing this suit. But Chadly's suit does not seek redress for legitimate

25  claims. Rather, Chadly weaponizes litigation, bringing a veritable kitchen-sink list of claims

26  designed to falsely paint herself as a victim. Chadly's suit includes meritless copyright

27  infringement claims relating to songs in which Music Together actually owns rights, and a host

28  of state laws claims ranging from tortious interference to intentional infliction of emotional

distress. But the facts reveal that Chadly's claims are based on nothing more than Music Together's legitimate efforts (and contractual right) to protect its own business and Chadly's attempt to continue her business without competition from Music Together. Music Together's counterclaims ask this Court to enforce Music Together's rights in the song it purchased from Chadly, declare Music Together's ownership of copyright in the other songs at issue, and enforce the terms of Music Together's license agreement with Chadly.

## FACTUAL BACKGROUND

### The Parties

Music Together, located in Hopewell, New Jersey, is a provider of early childhood music and movement programs for children from birth to age eight. (Ex. A, Kenneth K. Guilmartin Declaration, ¶ 3.) Music Together licenses its curriculum and intellectual property throughout the country to individuals and businesses who deliver Music Together's research-based music education program to children and families in their own areas and neighborhoods. *Id.* Chadly is a former licensee of the Music Together program who began her licensing relationship with Music Together in 2003 and continued to add new licensed locations for the Music Together program, eventually operating nine (9) locations before advising Music Together on July 26, 2023 that she was terminating her license relationship with Music Together. (Ex. B, ECF No. 45, p. 17, ¶ 8 & p. 19, ¶ 25; Ex. C, ECF No. 73, p. 2, ¶ 8 & p. 4, ¶ 25.)

### The Music Together License

Music Together and Chadly entered into the Music Together Independent Center License Agreement, effective August 31, 2022, which superseded all prior license agreements between them (the "2022 License"). (Ex. D, 1/27/25 Deposition of Justine Chadly, 51:10-24 & Ex. 11 thereto.) The 2022 License provides that to terminate the license the licensee must provide Music Together with at least 90 days' written notice. (Ex. D-11, ¶ 5(b).) The 2022 License cannot be sold, assigned or transferred by the licensee (Ex. D-11, ¶ 4(c)), and includes a provision permitting Music Together to waive breach by the licensee while reserving its rights to enforce the agreement (Ex. D-11, ¶ 7(b)).

***The Song Purchase Agreement***

On January 29, 2017, Music Together, Chadly and Foote executed a Song Purchase Agreement. (Ex. A, ¶ 9 & Ex. 3 thereto; Ex. D, 12:14-24 & Ex. 1 thereto.) The Song Purchase Agreement provides that Chadly and Foote are the co-authors of the song Singing in Harmony (and another song that is not at issue in this case) and that they have agreed "to sell all rights" in both songs to Music Together. The Song Purchase Agreement further provides that as consideration of the sale of all rights in Singing in Harmony, Music Together would pay $350 per song and specified that Chadly and Foote, as co-authors, would each receive $175 per song for the sale of the rights. The Song Purchase Agreement anticipated that an additional agreement would be entered to provide for terms of sharing of "income from any non-educational use of the songs outside of Music Together." (See Ex. A-3.)[1]

On December 19, 2017, Chadly emailed Andy Tomlinson, Music Together's Chief Operating Officer, to inquire when she would receive her $175 payment for Singing In Harmony pursuant to the Song Purchase Agreement. (Ex. D, 20:9-22:1 & Ex 2 thereto.) Chadly sent a follow-up email to Tomlinson on February 2, 2018 regarding "the songs and payment" to which Mr. Tomlinson replied on February 6, 2018 that Music Together would send a check for payment of the two songs that were the subject of the Song Purchase Agreement, notwithstanding that the additional agreement was not yet finished. (Ex. D, 26:7-28:22 & Ex. 3 thereto.) Two days later, on February 8, 2018, Music Together sent Chadly a check for $350, representing her $175 share of payment for each of two songs. (Ex. D, 29:6-17, Ex. E, ¶ 3.) Chadly deposited that check into her Chase bank account on March 5, 2018. (Ex. F, Chase Bank records.)

***Authorship of the Additional Songs***

In addition to Singing In Harmony, Chadly alleges that Music Together infringed on her copyrights in the songs Singin' My Song, Let Me Hear You, and Hand in Hand (collectively, the "Additional Songs.") On August 16, 2013, Music Together and Foote entered into a Consulting

---

[1]    The parties never executed the anticipated additional agreement, but Music Together has never received any income from non-educational use of Singing in Harmony outside of Music Together. (Ex. E, Declaration of Andy Tomlinson, ¶ 4).

Agreement, wherein Foote agreed that the right, title and interest to songs created as a result of tasks assigned by Music Together belonged to Music Together as a work for hire or, alternatively, by assignment of the rights to Music Together. (Ex. A, ¶ 4 & Ex. 1 thereto.) During the term of the Consulting Agreement, Music Together tasked Foote with creating songs for Music Together's use and Foote presented the Additional Songs to Music Together for use in Music Together's "Rhythm Kids" program. (Ex. A, ¶ 5.) Throughout the development of the Additional Songs, Foote repeatedly represented that he was the co-author with Chadly. (Ex. A, ¶ 6 & Gp. Ex. 2 thereto; Ex. E, ¶ 5 and Gp. Ex. 3 thereto.) Music Together relied on Foote's representations of co-authorship in adopting, recording, reproducing, distributing, and using the Additional Songs in Music Together's business. (Ex. A, ¶ 7; Ex. E, ¶ 6.)

Chadly was aware that Foote represented that he was a co-author of the Additional Songs. For example, in reviewing and approving the notation for Singin' My Song that credited Foote and Chadly authors, Foote told Music Together that he showed the notation to Chadly and that they both approved it. (Ex. A, ¶ 6 & Gp. Ex. 2.) Chadly also emailed Music Together requesting that it list song credits for a video of the song Let Me Hear You as "by Tom Foote and Justine Chadly, arranged by Kenneth G. Guilmartin." (Ex. A, ¶ 6 & Gp. Ex. 2.) Foote also provided Chadly with a list of songs constituting his "prolific songwriting" in which he credits himself with Chadly for songs, including Hand in Hand. (Ex. G, 6/4/24 Deposition of Justine Chadly, 291:24-292:24 & Ex. 43 thereto.) Chadly also signed the Song Purchase Agreement for Singing In Harmony that identifies her and Foote as "co-authors" repeatedly, including in the signature section. (Ex. A, ¶ 9 & Ex. 3 thereto.) Moreover, Chadly received written materials for use in teaching Music Together classes for each of the Additional Songs, all of which credited her and Foote as co-authors. (Ex. D, 95:22-101:20 & Exs. 16-19 thereto.) However, despite being aware of Foote's representations and of Music Together's crediting of both her and Foote as co-authors of the Additional Songs, Chadly never informed Music Together that she was the sole author or that Foote was not an author. (Ex. A, ¶ 8; Ex. E, ¶ 7.)

***Chadly's Termination and Breach of the 2022 License***

Chadly admits that she notified Music Together that she was terminating the 2022 License on July 26, 2023. (Ex. B, p. 19, ¶ 25; Ex. C, p. 4, ¶ 25.) Chadly sent her notice to Paul Marmo, Licensing Manager for Music Together, and Foote, stating that she was passing her licenses to Foote but also that "we realize he must reapply" for the licenses. (Ex. G, 161:23-166:9 & Ex. 13 thereto.) The 2022 License's 90-day notice period thus expired on October 24, 2023. Chadly and Marmo then exchanged a series of emails in which Marmo explained that during the 90-day period, Chadly could continue to offer the Music Together program, provided that she paid the applicable service fees. (Ex. G, 167:168:7 & Ex. 13 thereto.) Beth Seto and Morgan Cochneuer – two of Chadly's teachers during the summer of 2023 – provided declarations establishing that Chadly used Music Together's songs and curriculum in her business during the summer 2023 semester. Seto stated that not only did Chadly not direct teachers to cease using Music Together songs and materials, but Chadly sent her and the other teachers a text directing them to use their favorite songs in teaching the summer classes, specifically including Music Together songs and song collections. (Ex. H, Declaration of Beth Seto, ¶ 4.) Seto used Music Together songs in teaching classes for Chadly during that summer. (Ex. H, ¶ 4.) Similarly, Cochneuer stated that Chadly never informed him not that she was terminating her license with Music Together and that he therefore used the Music Together curriculum and songs in teaching the summer 2023 semester. (Ex. I, Declaration of Morgan Cochneuer, ¶ 4.) Chadly also admits that she continued to use Singing in Harmony in her classes after terminating the 2022 License. (Ex. C, p. 4, ¶ 28 & p. 5, ¶¶ 29 & 34.) Another teacher, Blair Nishio, confirmed that he was using Singing in Harmony to close classes he taught for Chadly. (Ex. J, 5/16/25 Deposition of Blair Nishio, 46:23-47:10.)

Despite directing and permitting her teachers to use the Music Together songs and curriculum during the summer 2023 semester and admitting to continuing use of Singing in Harmony, Chadly never paid any service fees to Music Together. (Ex. E, ¶ 8.) By Chadly's own admission, she had 286 enrollments in summer 2023. (Ex. G, 330:14-16.) The service fee

payable to Music Together in the summer 2023 was $34 per enrollee. (Ex. E, ¶ 8.) Therefore, Chadly owed but failed to pay Music Together $9,724 in service fees for the summer semester.[2]

**LEGAL STANDARD**

The Court should grant Music Together summary judgment if "there is no genuine dispute as to any material fact and [Music Together] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).

**ARGUMENT**

**I.    MUSIC TOGETHER OWNS THE COPYRIGHT TO SINGING IN HARMONY AND IS ENTITLED TO SUMMARY JUDGMENT ON COUNTERCLAIM I AND COUNTERCLAIMS V AND VI AND CHADLY'S COUNTS I, VI AND VII AS THEY RELATE TO SINGING IN HARMONY**

The Song Purchase Agreement establishes Music Together's ownership of the copyright in the song Singing In Harmony. Based upon that clear, written transfer of ownership, Music Together brings three claims against Chadly. First, Music Together asserts a copyright infringement claim in Count I of its Counterclaim. Second, Music Together also brings an accounting claim in Count V, seeking an account of Chadly's revenue garnered in exploiting Singing in Harmony. Third, Music Together brings an action in Count VI asking this Court to declare that Music Together is the sole owner of the copyright in Singing In Harmony. Throughout the course of this litigation, Chadly tried to avoid the effect of the Song Purchase Agreement by claiming that she did not know its provisions, that she never received payment,

---

[2] On September 7, 2023, Music Together sent an invoice to Chadly for payment of service fees in the amount of $14,280. The amount was based on Music Together's estimate of the number or enrollees in Chadly's classes because the actual number was not provided by Chadly or known by Music Together at the time it sent the invoice. (Ex. E, ¶ 8 and Ex. 4 thereto.)

6

1    that she did not know what the payment was for, or that she never cashed the check. But the

2    discovery process has proven Chadly's assertions are false. Music Together is entitled to

3    summary judgment on each of its claims with respect to Singing In Harmony.

4        The Copyright Act provides that a transfer of copyright is valid if the conveyance is in

5    writing and signed by the owner of the rights. 17 U.S.C. § 204. Here, the Song Purchase

6    Agreement meets both requirements because it is in writing and Chadly admits she signed it.

7    (Ex. D, 12:14-24 & Ex. 1 thereto.) Chadly does not contest that she was the owner of rights in

8    the song. In California, the construction of a contract such as the Song Purchase Agreement is a

9    question of law for the Court and terms must be given their ordinary meaning. *E.g.*, *Schertzer v.*

10    *Bank of Am., NA*, 109 F.4th 1200, 1208 (9th Cir. 2024). The Song Purchase Agreement

11    expressly provides that it conveys "all rights" in the song Singing In Harmony to Music

12    Together and clearly sets forth the consideration to be paid -- $350 per song to be divided

13    between Chadly and Thomas Foote as "co-authors."

14        The facts are clear that Chadly sought, received, and deposited in her account the

15    payment from Music Together for the transfer of the copyright in Singing in Harmony.

16    Specifically, on December 19, 2017, Chadly sent an email reminder to Music Together that she

17    was expecting payment of her $175 for the song and followed up with another email on February

18    2, 2018. Music Together responded on February 6 that payment pursuant to the Song Purchase

19    Agreement was forthcoming and sent that payment to Chadly two days later on February 8.

20    Bank records produced by Chase includes a copy of the February 8 check and indisputably

21    shows that Chadly deposited that check into her Chase account on March 5, 2018. (Ex. F.)

22        The ordinary terms of the written and fully-executed Song Purchase Agreement make

23    clear that Chadly transferred "all rights" to Singing In Harmony to Music Together, that the

24    consideration for the transfer of those rights was $350 to be split between Chadly and Foote as

25    co-authors, that "this payment is final, and that no other payments are or will become payable"

26    (with the limited exception of revenue sharing for "non-educational use outside of Music

27    Together" that never occurred). Chadly's emails to Music Together prove that she sought the

28    payment under the Song Purchase Agreement, Music Together responded that payment pursuant

1    to the Song Purchase Agreement was forthcoming, and Chadly received and accepted that

2    payment. At the latest, Music Together's ownership of all of Chadly's rights in Singing In

3    Harmony was conclusive when Chadly deposited the check for payment on March 5, 2018.

4    Music Together is entitled to the declaration sought in Count VI of the counterclaim that it is the

5    owner of the copyright in the song and, conversely, Music Together is entitled to summary

6    judgment in its favor and against Chadly on her declaratory judgment claim (Count VII) as it

7    relates to the ownership of the copyright to Singing In Harmony.

8            Because Music Together owns the copyright in Singing In Harmony, an unauthorized

9    reproduction, recording, or distribution of the songs by Chadly constitutes copyright

10   infringement. *E.g.*, *Gray v. Hudson*, 28 F.4th 87, 96 (9th Cir. 2022) ("To establish [copyright]

11   infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying

12   of constituent elements of the work that are original.") Music Together holds a certificate of

13   copyright registration PA 2-113-440 in the lyrics and music of Singing In Harmony. (Ex. E, ¶ 10

14   and Ex. 6 thereto.) Chadly admits in her answer to Music Together's counterclaim that she

15   continued to use Singing In Harmony after her license with Music Together terminated in 2023;

16   specifically, that she "recorded a performance of 'Singing in Harmony' after her license with

17   Music Together expired, and has distributed and performed it" (Ex. C, p. 4, ¶ 28), that she "uses

18   her own recording of 'Singing in Harmony' in teaching a children's music and movement class,"

19   (Ex. C, p. 5, ¶ 29), and that she never obtained any type of license for any use of the song from

20   Music Together, (Ex. C, p. 5, ¶ 34). Chadly's admissions prove she has no license to use Singing

21   In Harmony and infringed on Music Together's copyright by continuing to record, distribute,

22   and perform it after her license terminated.

23           This Court should also find that Chadly's infringement of Singing In Harmony was

24   willful as a matter of law. Chadly executed an agreement to sell all rights to the song to Music

25   Together, pursued payment from Music Together, accepted and deposited that payment, and then

26   acted as if the agreement and payment had never occurred. In fact, Chadly had the temerity to

27   bring a claim for infringement against Music Together on that same song. In *Peer Int'l Corp. v.*

28   *Pausa Records, Inc.*, 909 F.2d 1332 (9th Cir. 1990), the court upheld a finding of willful

infringement at summary judgment where the defendant knew that his conduct constituted infringement. The Court rejected the defendant's claim that he had a good faith belief that no infringement occurred, holding that the defendant "must not only establish its good faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief." *Id.* at 1336. Here, Chadly demanded payment under the Song Purchase Agreement and, within days of sending a follow-up inquiry received both notice that payment was forthcoming and the full payment she requested. Under these circumstances, there was no reasonable basis for Chadly to believe she retained any ownership in the song or that her continued use of it after her Music Together licenses expired was somehow authorized.

Music Together is entitled to summary judgment that Chadly willfully infringed the copyright in Singing in Harmony (Counterclaim Count I), that it is entitled to an accounting of the revenue Chadly collected from that infringement (Count V), and that it is entitled to a declaration that it owns the copyright in Singing In Harmony (Count VI). Music Together is also entitled to summary judgment on Chadly's claim for copyright infringement (Count I), accounting (Count VI), and declaratory relief (Count VII) to the extent those actions are dependent on her ownership of Singing in Harmony, which she cannot establish. The only remaining issue is the measure of damages to which Music Together is entitled.

## II. MUSIC TOGETHER IS ENTITLED TO SUMMARY JUDGMENT ON ITS COUNTERCLAIM FOR BREACH OF LICENSE BECAUSE PLAINTIFF VIOLATED THE TERMS OF HER AGREEMENT AND REFUSED TO PAY THE AMOUNT OWED FOR THE SUMMER 2023 SEMESTER

A party alleging breach of contract must prove (1) the existence of the contract; (2) the party's performance of the contract or a valid excuse for nonperformance; (3) the other party's nonperformance; and (4) resulting damages to the performing party. *See Bushnell v. JP Morgan Chase Bank, N.A.*, 220 Cal. App. 4th 915, 921 (2013). Here, there is no question that Chadly and Music Together entered into the 2022 License. Chadly has also admitted that she gave notice that she was terminating the license on July 26, 2023. (Ex. D, 58:10-16 & Ex. 13 thereto.)

As Marmo explained to Chadly, she had the option to continue to use Music Together's

1    materials and curriculum during the 90-day notice period, but she was obligated to pay the

2    applicable service fees if she did so. The declarations of Seto and Cochneuer establish that

3    Chadly continued to use Music Together's songs and curriculum during the summer 2023

4    semester, *i.e.*, after she terminated the license. (See Exs. H & I.) Chadly also admits to using

5    Singing In Harmony in her classes after terminating her license. (Ex. G, 185:2-4) As a result,

6    Chadly was obligated to pay the service fees totaling $9,724. Because she refused to make any

7    payment of those service fees for the summer 2023 semester (Ex. G, 178:17-179:3), Chadly

8    breached the 2022 License. Therefore, this Court should grant summary judgment in favor of

9    Music Together on Counterclaim Count III for breach of license.

10   **III.    MUSIC TOGETHER IS ENTITLED TO SUMMARY JUDGMENT ON**

11   **CHADLY'S CLAIMS FOR COPYRIGHT INFRINGEMENT OF THE**

12   **ADDITIONAL SONGS AND HER CLAIMS FOR ACCOUNTING AND**

13   **DECLARATORY RELIEF**

14   Summary judgment on Chadly's Count I for infringement of the copyrights in Singing In

15   Harmony[3] and the Additional Songs is warranted under the theory of equitable estoppel.

16   Equitable estoppel operates as a complete defense to copyright infringement in this Circuit. *See*,

17   *e.g.*, *Kramer v. From The Heart Prods.*, Inc., 300 F. App'x 555, 556 (9th Cir. 2008). Equitable

18   estoppel is intended to prevent parties from taking advantage of the law where a party "has so

19   conducted [itself] that it would be contrary to equity and good conscience" to permit the party to

20   prevail. *Granite State Ins. Comp. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir.

21   1996). To establish the defense of estoppel, four elements must be present: (1) the plaintiff must

22   know the facts underlying the defendant's alleged infringement, (2) the plaintiff must intend the

23   defendant to rely upon the plaintiffs conduct or must act in a way that gives the defendant the

24   right to believe plaintiff intended reliance, (3) the defendant must be ignorant of the true facts,

25   and (4) the defendant must rely on the plaintiff's conduct to its detriment. *Taylor Holland LLC v.*

26   *MVMT Watches, Inc.*, No. 2:15-cv-03578-SVW-JC, at *20 (C.D. Cal. Aug. 11, 2016).

27   [3] As to the song Singing In Harmony, this equitable estoppel argument is brought in the alternative to the argument that Chadly sold all right in the song pursuant to the Song Purchase

28   Agreement.

1    Case law supports application of the defense here. In *Carmichael Lodge No. 2103 v.*

2    *Leonard*, No. Civ. S-07-2665 LKK/GGH, 2009 U.S. Dist. LEXIS 84857, at *55-57 (E.D. Cal.

3    Sep. 15, 2009), the court relied upon several cases in which the plaintiff's prior approval of the

4    defendant's use of the allegedly infringed works resulted in the application of equitable estoppel

5    in the defendant's favor. For example, the court cited *Carson v. Dynegy, Inc.*, 344 F.3d 446, 453-

6    455 (5th Cir. 2003), in which the 5th Circuit affirmed summary judgment for the defendant

7    where the plaintiff encouraged his employer and fellow employees to use his copyrighted work

8    and only brought an infringement claim after his employment was terminated. In *Quinn v. City*

9    *of Detroit*, 23 F. Supp. 2d 741 (E.D. Mich. 1998), the court likewise held that equitable estoppel

10   barred a claim by a plaintiff who previously allowed use of his work and brought suit only after

11   his employment with the defendant ended. The Southern District of New York reached a similar

12   result in *DeCarlo v. Archie Comic Publ'ns, Inc.*, 127 F. Supp. 2d 497 (S.D.N.Y. 2001), in which

13   the court granted summary judgment for the defendant because the plaintiff had allowed

14   defendant to use his alleged copyrighted character for years but later tried to claim that his

15   permission to use the character was limited and brought suit when defendant attempted to use the

16   character in a movie. Based on those cases, the *Carmichael Lodge No 2103* court denied the

17   plaintiff's motion for summary judgment because there was sufficient evidence supporting the

18   equitable estopped defense. 2009 U.S. Dist. LEXIS 84857 at *58-60.

19        In this case, each element of estoppel is met. First, Chadly knew -- *for years* -- that Music

20   Together was using the Additional Songs because she had access to (and even paid Music

21   Together for the license to use) materials that included the Additional Songs in the Music

22   Together curriculum. And just like the plaintiffs in *Carson* and *Quinn*, Chadly waited until after

23   she terminated her relationship with Music Together to raise any allegation of copyright

24   infringement and never raised the issue previously. (Ex. A, ¶ 8; Ex. E, ¶ 7.) Second, Chadly not

25   only knew that Foote was representing himself to Music Together as a co-author of the

26   Additional Songs, but she also knew that Music Together identified Foote as a co-author of the

27   Additional Songs in the written instructional materials and on song charts distributed to and used

28   by Music Together's licensees. (Ex. D, 94:13-102:15 & Exs. 16-19.) Third, Music Together had

no reason to know that Foote was not a co-author and believed that Foote was a co-author based on his numerous representations that he and Chadly co-wrote the Additional Songs. (Ex. A, ¶ 6 & Gp. Ex. 2; Ex. E, ¶ 5 & Gp. Ex. 3; Ex. K, 6/3/25 Deposition of Thomas Foote, 111:20-116:10 & Ex. 55 thereto) Fourth and finally, Music Together relied on Foote's representations and Chadly's lack of any objection into its reproducing, recording, distributing and otherwise using the Additional Songs. (Ex. A, ¶ 7; Ex. E, ¶ 6.) Chadly cannot stand idly knowing that Foote claimed to be a co-author, knowing that Music Together believed Foote was a co-author and was using the Additional Songs in its curriculum, and then do an about-face and claim copyright infringement only after she decided to terminate the 2022 License. Under these circumstances it would "be contrary to equity and good conscience" to permit Chadly to prevail and summary judgment in favor of Music Together on the claims for copyright infringement (Count I), accounting (Count VI) and declaratory judgment (Count VII) is warranted.

## IV.    MUSIC TOGETHER IS ENTITLED TO SUMMARY JUDGMENT ON CHADLY'S CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACT BECAUSE THERE WAS NO BREACH OF CONTRACT

Chadly's claim for intentional interference with contractual relations fails as a matter of law because she has no admissible evidence establishing that a third party breached any contract with her. Under California law, a plaintiff alleging intentional interference with contract must prove: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Davis v. Nadrich*, 174 Cal. App. 4th 1, 10 (2009). The undisputed facts are clear that Music Together did not take any action designed to induce a breach or disruption of Chadly's contracts with her instructors nor did any breach occur.

Plaintiff's allegation in support of this claim is that Music Together, "through its officers, directors, and authorized agents, approached [her] current instructors and customers for In Harmony Music, and . . . they disparaged Ms. Chadly and poisoned her staff and customers against her, after which point several of Ms. Chadly's instructors quit, and her customers left."

(Ex. L, ECF No. 1, ¶ 27.) The communication between Music Together and Chadly's teachers was an email that Music Together's general counsel, Jill Perhach, sent to the teachers, advising the them that Chadly's license was terminating and to "be mindful that without a license or [sic] for use in a Music Together licensed center, you do not have permission to use the program, curriculum, brand, and trademarks, also known as Music Together's intellectual property." (Ex. E, ¶ 9 & Ex. 5 thereto.) Perhach's email informed the teachers that they would no longer be able to use Music Together's intellectual property, but its content makes clear that it was not designed to address the teacher's continuing relationship with Chadly or to cause the teachers to quit.

The lack of any resultant breach is also fatal to Chadly's claim. In *Davis*, the court found the plaintiff could not prove intentional interference with contract because he had not put forth any facts showing that there was an actual breach of a contract. 174 Cal. App. 4th at 10. The plaintiff, an attorney who was in the process of winding down a partnership agreement with another lawyer, argued that the defendant disrupted the contract between the business partners by only referring business to Davis's partner individually rather than the practice they had managed together. *Id.* The court rejected the plaintiff's argument, concluding that Davis had not presented any evidence that his contract with his business partner precluded the partner from accepting cases personally and, therefore, the defendant's action could not have cause a breach. *Id.* at 12. Similarly, Chadly conceded, "I don't think the teachers breached anything." (Ex. G, 280:1-2) and confirmed that her teachers "had a right to go teach wherever they wanted to go teach." (Ex. G, 331:11-12.) Like the circumstances in *Davis*, because Chadly admits that the teachers have the right to teach elsewhere, Music Together's conduct allegedly causing them to do so does not constitute intentional interference with contract as it relates to the teachers.

Chadly also alleged that her interference with contract claim was based on "valid contracts between Chadly and third parties . . . who had signed up to take instructional classes from Ms. Chadly through In Harmony Music." (Ex. L, ¶ 44.) A valid contract requires reasonably certain terms that "provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768, 777 (6th Dist. 2013). Chadly has never identified any such contract and candidly testified that she

could not identify any contract between her and her customers. (Ex. G, 280:11–283:11.)

Moreover, there is no evidence in this case that Music Together undertook any conduct directed

at Chadly's customers causing them to breach or disavow any contract with Chadly. Other than

timely payment, the customers had no contractual obligation to Chadly's business. (Ex. G,

283:8-11.) Further, Chadly's testimony confirms that Music Together did not induce her

customers to fail to pay for the sessions they registered for:

> Q. Okay. So did — was there anything — Did Music Together do
>
> anything that caused a customer to fail to pay any amount that they
>
> were obligated to pay you?
>
> A. I don't know of any actions that Music Together did.
>
> Q. Okay. Do you know of any failure by a customer to pay you an
>
> amount that they were obligated to pay you?
>
> A. I don't believe so.

(Ex. G, 284:16-24.) Chadly simply cannot prove that Music Together interfered with or caused a

breach or disruption with any contract between Chadly and her customers. Music Together is

therefore entitled summary judgment on the issue of intentional interference with contractual

relations.

## V.    CHADLY CANNOT SUCCEED ON A CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ADVANTAGE

The elements of intentional interference with prospective advantage are: (1) an economic

relationship between the plaintiff and some third party, with the probability of future economic

benefit to the plaintiff; (2) The defendant's knowledge of the relationship; (3) intentional acts on

the part of the defendant designed to disrupt the relationship; (4) actual disruption of the

relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the

defendant. *Buckaloo v. Johnson*, 14 Cal. 3d 815, 827 (1975). Since *Buckaloo*, courts have

elaborated on these requirements. A cause of action for tortious interference fails under the first

prong if it "has been found lacking when either the economic relationship with a third party is

too attenuated or the probability of economic benefit [is] too speculative." *See Roy Allan Slurry*

1    *Seal, Inc. v. Am. Asphalt S., Inc.* 2 Cal. 5th 505, 515 (2017). In 1995, the California Supreme

2    Court explained that the intentional acts described in the third prong must be wrongful. *See*

3    *Della Penna v. Toyota Motor Sales, U.S.A.*, 11 Cal. 4th 376, 393 (1995) (plaintiff must prove

4    "that the defendant not only knowingly interfered with the plaintiff's expectancy but engaged in

5    conduct that was wrongful by some legal measure other than the fact of interference itself."). An

6    act is "independently wrongful act if it is unlawful, that is if it is proscribed by some

7    constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea*

8    *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003), and "fall[s] outside the

9    boundaries of fair competition." *Settimo Assocs. v. Environ Sys., Inc.*, 14 Cal. App. 4th 842, 845

10   (4th 1993).

11          Here, the economic relationship and probability of future economic benefit to Chadly

12   based on vague notions about selling her business to Mr. Foote is too remote to establish tortious

13   interference. Additionally, Chadly has not established a triable issue as to whether Music

14   Together committed an independent wrongful act to disrupt any economic advantage that may

15   have come from that sale.

16          **A.    Chadly did not have a sufficient economic relationship with Mr. Foote to**

17                 **establish the first element of tortious interference with prospective economic**

18                 **advantage.**

19          Chadly's claim for intentional interference with prospective advantage hinges on the

20   alleged "economic relationship that would have resulted in an economic benefit to Chadly

21   through the sale of her Music Together Center," to her fiancé Foote (Ex. L, ¶ 50), but she has

22   provided no evidence to prove that a relationship actually existed between them that would have

23   led to economic advantage. California courts reject claims where a plaintiff's assertion that a

24   prospective economic advantage existed is too vague to confirm. *See Koerber v. Project Veritas*,

25   BC649878, 2019 Cal. Super. LEXIS 96220 (Cal. Super. Ct. May 13, 2019). In *Koerber*, the

26   plaintiff alleged that prospective employers had declined to hire her based on comments the

27   defendants made about her in a published video. *Id* at 74. The court concluded that this statement

28   was too vague to establish that the plaintiff actually had prospective employers at the time the

1    video was published. *Id.* Therefore, the court granted the defendant's special motion to strike the

2    Plaintiff's claim for intentional interference with a prospective economic advantage. *Id.*

3         In her deposition, Chadly described only a vague plan to sell In Harmony Music to Foote

4    rather than any concrete prospective sale. She acknowledged that a number of crucial terms of

5    the arrangement had not even been discussed, let alone decided. For instance, Ms. Chadly

6    insisted she was not selling the name In Harmony Music to Mr. Foote, but, when asked whether

7    any of the goodwill that had accrued with the name would be transferred to him, she replied "I

8    don't know." (Ex. G, 153:12-15). Chadly and Foote had not reached any agreement regarding

9    what musical instruments would be included in the sale, (Ex. G, 145:11– 147:9), what location

10   leases would be transferred to him, (Ex. G, 158:13-15), and whether teacher contracts would be

11   transferred and upheld, (Ex. G, 249:23-25). Most notably, Plaintiff admitted that she and Mr.

12   Foote had not come to an agreement about whether she could pursue the same clients on the

13   client list she was supposedly selling to him once she continued teaching her own program. (Ex.

14   G, 250:1-5.) In his deposition, Mr. Foote confirmed that many of the material details were

15   unresolved and explained that he did not have financing lined up for this sale. (Ex. K, 165:21-

16   166:19.)

17        Despite admitting that she and Foote had not decided on most of the material terms that

18   would make up a sales contract and did not produce even a single draft document relating to the

19   sale, Chadly maintains that they agreed on a price based on her previous purchases of music

20   education businesses. But a so-called agreement lacking all essential terms other than a price that

21   is informed by contracts entered several years ago is too attenuated for Chadly to establish a

22   tortious interference claim, and to assign any economic value to this flimsy, if not collusive,

23   economic relationship would require significant speculation. Given that Foote is her fiancé,

24   Chadly and Foote could make up any value that they claim they would reach for the sale of

25   Chadly's business, but when pressed in deposition, their testimony revealed that the sale was

26   nothing more than speculation without any concrete determination as to the assets being sold.

27

28

1        **B.**    **Music Together did not commit an independent wrongful act because it did**

2                  **not violate any statute, ordinance, or other source of legal authority in**

3                  **exercising its discretion when choosing not to award a license to Mr. Foote.**

4        The independent wrongful act requirement ensures that the tort is not being improperly

5  used to "punish individuals or commercial entities for their choice of commercial relationships

6  or their pursuit of commercial objectives, unless their interference amounts to independently

7  actionable conduct." *Korea Supply Co.*, 29 Cal. 4th at 1159 (plaintiff satisfied the independent

8  wrongfulness requirement by alleging that defendant had engaged in unlawful acts including

9  bribery in violation of Foreign Corrupt Practices Act). A plaintiff's mere disappointment with

10  the outcome of a business decision cannot establish a claim for interference with prospective

11  economic advantage unless the defendant's actions were in violation of a statute, ordinance, or

12  other applicable legal authority. *See Crown Imps., LLC v. Superior Court*, 223 Cal. App. 4th

13  1395, 1406.

14        In *Crown Imports, LLC*, the appellate court overruled the trial court's denial of the

15  defendant's motion for summary judgment because none of the legal bases the plaintiff

16  presented as independent wrongful acts actually prohibited the defendant's conduct. *Id.* at 1410.

17  The defendant, a beverage importer, declined to approve the sale of the plaintiff's beer

18  distributorship to another local distributor. *Id.* at 1401. To show a wrongful act, the plaintiff

19  relied on Bus. & Prof. Code, § 25000.9 which establishes the price a beer manufacturer must pay

20  a seller if it unreasonably withholds consent for a sale, transfer, or assignment of ownership.

21  However, the court found that the defendant did not commit an independent wrongful act

22  because the statute did not prohibit the denial, even if it is unreasonable, but required the

23  manufacturer to compensate the disappointed party. *Id.* at 1405-06.

24        Here, Chadly has no evidence establishing that Music Together committed an

25  independent unlawful wrong. Chadly's claim for intentional interference with prospective

26  economic advantage is limited to her contention that Music Together chose not to issue a license

27  to Foote and subsequently fired him as a Music Together employee. (Ex. L, ¶ 51.) But Chadly

28  does not and cannot cite any statute or legal authority that prohibited Music Together from

17

DEFENDANT/COUNTER-PLAINTIFF MUSIC TOGETHER, LLC'S NOTICE OF MOTION AND MOTION
FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
3:24-cv-1096-WHA

1   making these decisions and instead makes vague accusations that Music Together engaged in,

2   "misrepresentations, threats, defamation, trade libel, and other unethical business practices." *Id.*

3   But like the defendant in *Crown Imports*, Music Together was under no obligation to issue any

4   license to Foote (although it did grant two of his three license applications) (Ex. K, 212:16-

5   213:1), or to prefer him over any other potential licensee, and cannot be punished for any ripple

6   effects that decision may have had on Chadly. In fact, in her email to Music Together, Chadly

7   acknowledged that "we realize he [Foote] must reapply" for the licenses. (Ex. G, 161:23-166:9

8   & Ex. 13 thereto.) Simply put, Chadly cannot prove that any wrongful act occurred. Therefore,

9   Music Together is entitled to summary judgment on the claim of tortious interference with

10  prospective economic advantage.

11  **VI.     MUSIC TOGETHER IS NOT LIABLE FOR UNFAIR COMPETITION**

12  **BECAUSE ITS ACTIONS DID NOT VIOLATE ANY ANTITRUST LAWS OR**

13  **THE SPIRIT OF ANY PUBLIC POLICY GOALS RELATED TO BUSINESS**

14  **COMPETITION**

15          California's unfair competition law in the Business and Professional Code provides that

16  "unfair competition shall mean and include any unlawful, unfair, or fraudulent business act or

17  practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by . . . the

18  Business and Professions Code." ULC ¶ 17200. To establish standing, a plaintiff must show that

19  she, "suffered injury in fact and has lost money or property as a result of unfair competition."

20  UCL ¶ 17204.

21          Courts agree that unfair conduct under the Act does not have to be illegal, but they "have

22  struggled to come up with a workable definition," for the type of lawful conduct that would fall

23  under the statute. *Davis v. Ford Motor Credit Co. LLC*, 179 Cal. App. 4th 581, 594 (2nd Dist.

24  2009). But it is clear that the test for unfair conduct differs depending on whether the plaintiff is

25  a competitor or a consumer of the defendant. *See Drum v. San Fernando Valley Bar Assn.*, 182

26  Cal. App. 4th Dist. 247, 254 (2nd Dist. 2010).

27          In competitor cases, a business practice is unfair only if it "threatens an incipient

28  violation of an antitrust law or violates the policy or spirit of one of those laws because its

18

DEFENDANT/COUNTER-PLAINTIFF MUSIC TOGETHER, LLC'S NOTICE OF MOTION AND MOTION
FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
3:24-cv-1096-WHA

1    effects are comparable to or the same as a violation of the law, or otherwise significantly

2    threatens or harms competition." *Cel-Tech Commc'ns, Inc. v Los Angeles Cellular Tel. Co.*, 20

3    Cal. 4th 163, 187 (1999). While Chadly was, at one time, a licensee of Music Together, her

4    claims arise from actions she alleges Music Together took to "destroy fair competition in the

5    marketplace" amongst early childhood music education classes in a way that harmed her own

6    business and ability to run a program that would have competed with Music Together's existing

7    licensees. (Ex. L, ¶ 58.) Her claims are therefore appropriately analyzed under the antitrust type

8    of analysis applicable to competitors.

9        The United States Supreme Court has emphasized that "antitrust laws . . . were enacted

10   for the protection of *competition*, not *competitors*." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479

11   U.S. 104, 110 (1986) (original italics) (internal quotations omitted). They "do not require the

12   courts to protect small businesses from the loss of profits due to continued competition, but only

13   against the loss of profits from practices forbidden by the antitrust laws." For this reason, the

14   California Supreme Court has held that to establish a finding of unfairness under § 17200, the

15   claim must be "tethered to some legislatively declared policy or proof of some actual or

16   threatened impact on competition." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 565.

17       Chadly cannot base her claim on Music Together's denial of a license to Foote. Music

18   Together denied only one of three license applications by Foote because there were already

19   several other more-established licensees in the same general geographic area who provided more

20   classes than what Foote had proposed. (Ex. M, 5/27/25 Deposition of Paul Marmo, 153:3-8.) A

21   business is not liable under § 17200 for the fact that their attempts to fairly compete in the

22   marketplace caused hardship to competitors. But that is precisely Chadly's grievance, which can

23   be summed up by deposition testimony: "I gave them all this money [while a licensee], and

24   they're doing nothing but competing and making everything hard for me." (Ex. G, 354:13-15.)

25   Just as the defendant in *Drum* that was within its right to decline the plaintiff's request for access

26   to its membership list, Music Together had the prerogative to deny a license to Foote for the

27   entirely proper purpose of limiting the number of new centers in a particular geographic area.

28       Chadly simply cannot point to any antitrust regulation, law, or public policy that Music

1    Together violated and her attempt to loosely tie her unfair competition arguments to the various

2    tortious acts she has alleged must fail. Consequently, Music Together is entitled to summary

3    judgment on this claim.

4    **VII.    MUSIC TOGETHER IS ENTITLED TO SUMMARY JUDGMENT ON**

5    **CHADLY'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL**

6    **DISTRESS BECAUSE MUSIC TOGETHER DID NOT ENGAGE IN ANY**

7    **EXTREME OR OUTRAGEOUS CONDUCT**

8        Chadly's claim for IIED fails as a matter of law because Chadly cannot prove that Music

9    Together acted in an extreme and outrageous manner causing her distress. To establish a claim

10    for intentional infliction of emotional distress, a plaintiff must prove: (1) extreme and outrageous

11    conduct by the defendant with the intention of causing, or reckless disregard of the probability of

12    causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3)

13    actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

14    *See Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 883 (1st Dist. 1989); *Fletcher v. W.*

15    *Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 394 (4th Dist. 1970). Although courts may consider

16    whether defendant knew an individual had a special susceptibility to emotional distress in

17    determining whether the conduct was outrageous, susceptibility is not enough – "major outrage

18    is still essential to the tort; and the mere fact that the actor knows that the other will regard the

19    conduct as insulting, or will have his feelings hurt, is not enough." *Cochran v. Cochran*, 65 Cal.

20    App. 4th 488, 496 (2nd Dist. 1998). Liability is found "only where the conduct has been so

21    outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

22    decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*;

23    *Fowler v. Varian Assocs.*, 196 Cal. App. 3d 34, 44 (6th Dist. 1987) (to be outrageous, conduct

24    must be so extreme as to exceed all bounds of that usually tolerated in a civil society). Plaintiff

25    has no evidence of extreme and outrageous conduct by Music Together or that Music Together's

26    conduct was the actual and proximate cause of her emotional distress.

27        **A.    Music Together's conduct was not extreme and outrageous.**

28        In considering a summary judgment motion, a court may determine whether the

20

defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *See Trerice*, 209 Cal. App. 3d at 883. In *Trerice*, the plaintiff alleged IIED based on her employer terminating her employment as part of company layoffs and presenting her with an exit package. The employer then revoked the termination, only to reinstate it shortly thereafter. Upon the second termination, the employer presented her with a package that was less advantageous than the first. *Id.* at 884. The court noted that the employer's conduct was "not exemplary" but found that it was not outrageous because Blue Cross was protecting its own economic interests and asserting its legal rights. *Id.* at 885. Therefore, the appellate court held that the trial court did not abuse its discretion in granting summary judgment in favor of the employer. Similarly, in *Kruse v. Bank of America*, 202 Cal. App. 3d 38, 67 (1st Dist. 1988), the court reversed a finding that defendant bank was liable for causing emotional distress based on a decision to liquidate the assets of a debtor corporation which included property on which the plaintiff lived (which defendant knew) because the bank had an economic self-interest in liquidating and thus could not be liable for intentional infliction of emotional distress.

Plaintiff's claim for intentional infliction of emotional distress asserts that, in retaliation for refusing to allow Music Together to purchase her songs, Music Together began "engaging in tactics designed to force her hand," which caused her to suffer "severe emotional distress, including, among other things, extreme panic attacks requiring medical intervention." (Ex. L, ¶¶ 61 & 63.) When asked about the cause of her feelings on the day she was admitted to the hospital on June 13, 2023, Chadly replied that she had received an email from Paul Marmo, Licensing Manager of Music Together, with a "list of all the things [she was] being watched for" and suggesting that she was in breach of her license agreement. (Ex. G, 351:23-352:3.) In her deposition, Chadly went so far as to claim that she perceived this standard business communication as "an attack," (Ex. G, 352:13-22), but failed to recall that the email laid out several options for resolving the issues with her license and working with Music Together to find a solution. *Id.* In fact, Marmo's email stated that, "[Music Together's] preference is that you continue as a licensee, as we value you as a part of our community . . . We welcome the opportunity to meet with you to discuss any concerns you may have." (Ex. M, 90:20-93:4 & Ex.

1  6 thereto.)

2        Chadly claims that this email was the inciting incident behind her severe emotional

3  distress and hospitalization, but the discussions surrounding her violations, the potential sale of

4  her business, and the eventual termination of her Music Together license were all standard

5  business communications. Like the plaintiff in *Trerice*, Ms. Chadly was not singled out or

6  ridiculed for her personal decisions. *Trerice*, 209 Cal. App. 3d at 884. Rather, Music Together

7  merely sought to enforce the terms of the 2022 License with Chadly. Music Together's actions

8  regarding the purported license violations were all in the pursuit of protecting its intellectual

9  property and economic interests and thus do not constitute intentional infliction of emotional

10  distress. Similarly, neither Perhach's email to the teachers nor Music Together's decision to deny

11  a license to Foote based on business and economic factors "go beyond all possible bounds of

12  decency" or are "regarded as atrocious, and utterly intolerable in a civilized community" as

13  required under *Cochran*. 65 Cal. App. at 496 (finding that appellants failed to state a cause of

14  action for intentional infliction of emotional distress because, without sufficient specificity and

15  follow through, Respondent's messages amounted only to insults and annoyances rather than

16  serious death threats).

17        To bolster her insufficient claim, Chadly also references "racist comments" allegedly

18  made by Music Together's founder, Kenneth Guilmartin, at a national conference of Music

19  Together licensees in 2019. But this aspect of her claim is easily dispensed with because it falls

20  far outside the two-year statute of limitations for bringing an intentional infliction of emotional

21  distress claim in California. Cal. Code Civ. Proc. § 335.1. Thus, Chadly cannot prove that Music

22  Together engaged in any extreme and outrageous conduct necessary to establish intentional

23  infliction of emotional distress.

24        **B.    Music Together's actions were not the actual and proximate cause of**

25              **Plaintiff's emotional distress.**

26        Chadly cannot succeed on the causation element of intentional infliction of emotional

27  distress. It is undisputed that Ms. Chadly drove herself to the emergency room on July 19, 2023

28  while experiencing symptoms of a panic attack and that she has been treated in the past at an in-

1  patient behavioral health facility. What Ms. Chadly has failed to prove is that her symptoms

2  were caused by Music Together's actions. Ms. Chadly's "History of Present Illness and Chief

3  Complaint" from her emergency room visit states that she reported, "severe depression, and

4  thoughts of suicide," and that "she lost her son 4 years ago, and since then has been spiraling

5  down." (Ex. G, 350:4-19.) The hospital record does not refer to anything related to her work, her

6  relationship with Music Together, or the email sent by Paul Marmo earlier that same day. *Id.*

7  When asked why this was left out of the report, Ms. Chadly responded, "I'm not going to go to

8  the ER and say I got an email. It doesn't make any sense . . . It's a much longer story and all they

9  care about is one main thing so I gave them something to work with." (Ex. G, 353:8-16.)

10  Plaintiff's own admissions to the treating physician in the emergency room acknowledge that

11  Music Together's actions related to her license violations were not sufficient to cause the

12  extreme level of emotion distress she was exhibiting.

13         In her deposition, Ms. Chadly alludes to several other contributing factors that led to her

14  panic attacks. She said, "I'm coming out of the death of my son, a pandemic . . . I'm fighting

15  tooth and nail to keep this business going." (Ex. G, 354:2-6.)  Chadly claims to have suffered

16  many hardships in the years preceding this dispute. The evidence presented, including Ms.

17  Chadly's own medical records, proves that these other numerous stressors were the cause of her

18  distress—not Music Together's efforts to advance its economic interests and resolve issues

19  stemming from Plaintiff's license agreement violations. Even when considering her alleged

20  fragile emotional state stemming from personal traumas, Music Together had no reason to

21  believe that its entirely professional communications about a standard business dispute would

22  cause Plaintiff to feel this level of disproportionate outrage and distress.

23                                          **CONCLUSION**

24         For all of the reasons set forth herein, Music Together, LLC respectfully requests that the

25  Court enter summary judgment in its favor and against Justine Chadly on all of her claims, enter

26  summary judgment in its favor and against Justine Chadly on Counterclaim Counts I and III, and

27  enter partial summary judgment in its favor and against Justine Chadly on Counterclaim Counts

28  V and VI, and grant Music Together, LLC all other relief the Court deems appropriate.

1    Dated: August 21, 2025         Jassy Vick Carolan LLP
2                                       Attorneys for Defendant/Counter-Plaintiff
                                      Music Together, LLC

3

                                      By: /s/ Nicholas R. Hartmann
4                                            Nicholas R. Hartmann

5                 and              Mandell Menkes LLC
6                                        Attorneys for Defendant/Counter-Plaintiff
                                      Music Together, LLC

7

                                      By: /s/ Brian D. Saucier
8                                            Brian D. Saucier

9                                            *Admitted Pro Hac Vice*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28