# EXHIBIT A

Kevin L. Vick (SBN: 220738)
kvick@jassyvick.com
Nicholas R. Hartmann (SBN: 301049)
nhartmann@jassyvick.com
**Jassy Vick Carolan LLP**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (310) 870-7048
Facsimile: (310) 870-7010

Steven P. Mandell (IL SBN 6183729)
*Admitted Pro Hac Vice*
smandell@mandellmenkes.com
Brian D. Saucier (IL SBN 6226006)
*Admitted Pro Hac Vice*
bsaucier@mandellmenkes.com
**Mandell Menkes LLC**
One North Franklin, Suite 900
Chicago, IL 60606
Telephone: 312.251.1000
Facsimile: 312.251.1010

Attorneys for Defendant Music Together, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JUSTINE CHADLY, an individual,

Plaintiff,

v.

MUSIC TOGETHER, LLC, and DOES 1 to 25, inclusive,

Defendants.

Case No.: 3:24-cv-1096-WHA

**DECLARATION OF KENNETH K. GUILMARTIN IN SUPPORT OF DEFENDANT/CROSS-PLAINTIFF'S OPPOSITION TO PLAINTIFF/CROSS-DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Judge: Honorable William H. Alsup

**DECLARATION**

I, Kenneth K. Guilmartin, pursuant to 28 U.S.C. ¶ 1746, state and affirm as follows:

1. I am over the age of eighteen, the facts in this declaration are based on my personal knowledge and information available to me, and if called as a witness I could testify to these facts.

2. I am the founder and an owner of Music Together, LLC ("Music Together") and previously served as its Chief Executive Officer.

3. Music Together is located in Hopewell, New Jersey, and is a provider of early childhood music and movement programs for children from birth to age eight. Music Together licenses its curriculum and intellectual property throughout the country to individuals and businesses who deliver Music Together's research-based music education program to children and families in their own areas and neighborhoods.

4. On August 26, 2013, Music Together entered into a Consulting Agreement with Thomas Foote ("Foote") and his company, InstaGroove Music, LLC. A true and correct copy of that Consulting Agreement is attached to this Declaration as Exhibit 1.

5. During the term of the Consulting Agreement, Music Together tasked Foote with creating songs for use by Music Together and Foote presented Music Together with several songs to be used in Music Together's "Rhythm Kids" programs, including but not limited to the songs Singing in Harmony, Singin' My Song, Hand in Hand, and Let Me Hear You (collectively, the "Songs").

6. I worked with Foote in developing these songs for use in the Rhythm Kids program. During that work, Foote and I engaged in numerous communications in which Foote represented to me that he was the co-author of the Songs together with Justine Chadly. Attached to this Declaration as Exhibits 2-10 are true and accurate copies of the communications with Foote in which he stated that he was the co-author of the Songs. Each of these communication records were made at the time they were sent or received, I have knowledge of the retention and maintenance of such records by Music Together and of the events set forth therein, they were

kept by Music Together in the ordinary course of Music Together's business, and it was the practice of Music Together to make and keep such communication records in the regular course of Music Together's business.

7. Music Together relied on Foote's representations that he was a co-author of the Songs when it decided to adopt, record, reproduce, distribute, and otherwise use the Songs in Music Together's business. Specifically, Music Together based its decisions on the provisions of Foote's Consulting Agreement that provided Music Together would own all right, title and interest in and to the Songs, and that Foote had the ability to grant those rights to Music Together.

8. At no time prior to the filing of this lawsuit did Chadly ever inform me that she was the sole author of any of the Songs or that Foote was not her co-author of any of the Songs, and I am unaware of Chadly informing anyone at Music Together that she was the sole author of any of the Songs or that Foote was not an author.

9. On January 29, 2017, Music Together, Chadly and Foote executed a Song Purchase Agreement, a true and correct copy of which is attached to this Declaration as Exhibit 11. Music Together relied on Chadly's execution of the Song Purchase Agreement when it decided to adopt, record, reproduce, distribute, and otherwise use Singing in Harmony in Music Together's business.

10. At no time did I ever advise Foote that he was an author if he merely arranged any of the Songs. In fact, I claimed credit as the arranger of the Songs but did not claim authorship of the Songs arising from my role as an arranger.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: September 4, 2025

[signature]

Kenneth K. Guilmartin

# EXHIBIT A-1

# CONSULTING AGREEMENT

**CONSULTING AGREEMENT** (the "Agreement"), dated August 26, 2013, by and between Music Together, LLC, a New Jersey limited liability company having an address at 66 Witherspoon Street, Princeton NJ 08542 (the "Company"), InstaGroove Music, LLC, a Massachusetts limited liability company having an address at 2 Vanderbelt Road, Acton, MA 01720 (the "Consultant") and Thomas Foote, an individual having an address of 2 Vanderbelt Road, Acton, MA 01720 (the "Individual").

**WITNESSSETH**:

**WHEREAS**, the Company wishes to retain the Consultant's services and the Consultant desires to provide its services to the Company upon the terms set forth herein.

**NOW, THEREFORE,** in consideration of the mutual covenants contained herein and intending to be legally bound, the parties hereto agree as follows:

**1. Consulting Services**. During the Term (defined below) of this Agreement, the Consultant shall provide consulting services to the Company (the "Consulting Services"). Such Consulting Services may include, without limitation, development of curricula and supporting materials as well as the delivery of teaching, training, mentoring and marketing services. The Consulting Services shall be rendered by the Consultant solely through the Individual. During the Term, the Consultant shall devote such time, attention, skill and efforts to the business and affairs of the Company and its subsidiaries and affiliates as is necessary to perform the Consulting Services, which, for the avoidance of any doubt, may include weekend and evening work. The Consultant and the Individual agree to carry out the Consulting Services hereunder in a reasonable, diligent, prudent and professional manner. The Consultant shall primarily perform the Consulting Services at the Consultant's location, *provided*, *however*, that the Consultant shall be required to travel regularly and to perform the Consulting Services at such other places as is deemed reasonably necessary to fulfill the Consultant's obligations hereunder as shall be determined in the Company's sole discretion.

**2. Consulting Fees; Expenses**.

(a) The Company shall pay the Consultant a fee during the Term (the "Consulting Fee") of [redacted] subject to adjustment as described below. The Consultant shall submit its hours monthly for review and approval by the Company. The Consulting Fee shall be payable monthly in arrears in accordance with the Company's standard practices for consultants in effect from time to time. The Consulting Fee shall be reviewed on a quarterly basis during each calendar year of the Term and may be adjusted upward or downward depending on the time spent by the Consultant performing the Consulting Services and the nature of the Consulting Services performed in order to provide for compensation of the Consultant at rates commensurate with the then-current rates paid by the Company to others for similar services.

(b) During the Term, the Consultant may be eligible to earn royalties

("Royalties") as are from time to time determined by the Company and set forth in writing by the parties, in accordance with, and subject to, the terms and conditions set forth therein (the "Royalty Agreement"). The satisfaction or achievement of any agreed-on objectives, if any, shall be determined by the Company (in its sole and good faith discretion). Any Royalty Agreement shall only be effective upon written execution by both parties and shall at all times be subject to, and deemed a part of, this Agreement. Notwithstanding anything in the Royalty Agreement to the contrary, any and all rights of the Consultant to receive Royalties shall cease immediately upon the Consultant's and/or the Individual's Competing (as defined in Section 7 herein) with the Company.

(c) The Company shall reimburse the Consultant for all out-of-pocket expenses reasonably incurred by the Consultant and preapproved by the Company in writing in connection with the provision of the Consulting Services in accordance with the general reimbursement policy of the Company then in effect. The Consultant's right to reimbursement of such expenses is expressly conditioned on the Company's receipt of appropriate documentation of such expenses so as to preserve any claim of deductibility of such expenses by the Company for federal income tax purposes. Notwithstanding the foregoing, when travel is required, the Consultant will be reimbursed for reasonable and customary out-of-pocket travel expenses consistent with past practices of the Company without preapproval by the Company but otherwise in accordance with the requirements above.

**3. Term**. This Agreement shall commence on September 1, 2013 (the "Effective Date"), and shall expire, unless earlier terminated as provided herein or extended by the mutual agreement of the parties, on the five (5) year anniversary of the Effective Date (the period commencing on the Effective Date and ending on the expiration or termination of the Agreement shall be referred to herein as the "Term"). This Agreement shall terminate immediately upon the death or permanent disability of the Individual, and in the event of any termination of this Agreement (including pursuant to Section 11 below), the Company shall have no further obligation to pay the Consultant the fees specified in Section 2(a) except for work already performed; *provided, however,* that such termination shall not affect the Company's obligation to (a) remit to the Consultant any fees owed pursuant to and as provided for in any separately-entered Royalty Agreement (in accordance with and subject to the terms of any such Royalty Agreement and Section 2(b)) and (b) reimburse the Consultant in accordance with Section 2(c) for any out-of-pocket expenses incurred prior to such termination.

**4. Status of the Consultant**.

(a) The Consultant shall be an independent contractor, and this Agreement shall not be construed to create any association, partnership, joint venture, employee or agency relationship between the Consultant and/or the Individual and the Company for any purpose. Neither the Consultant nor any of its employees or other agents shall make any agreements or representations on the Company's behalf, or have the power to bind the Company legally, without the Company's prior written consent.

(b) Without limiting subsection 4(a) above, neither the Consultant nor any of its employees, agents or representatives shall be considered as having employee status with the

Company nor shall they be entitled to participate in any vacation, group medical or life insurance, disability, profit sharing or retirement benefits or any other fringe benefits or benefit plans maintained by the Company for employees, and the Company will not be responsible for withholding or paying any income, payroll, Social Security or other federal, state or local taxes, making any insurance contributions, including unemployment or disability or obtaining worker's compensation insurance on behalf of the Consultant or any of its employees, agents or representatives. The Consultant will be responsible for all such taxes and contributions, including any penalties and interests that may apply.

(c) In connection with the provision of the Consulting Services, the Consultant shall not act in any manner to discriminate against or harass any person due to the race, color, age, sex, national origin, ancestry, religion, disability or other factor prohibited by federal, state or local law, and shall act in the best interests of the Company.

**5. Confidentiality; Return of Property.**

(a) The Consultant and the Individual recognize that during the course of performing Consulting Services hereunder they will have access to and may create Proprietary Information. The Consultant and the Individual acknowledge that the Proprietary Information is the property of the Company and has been and will continue to be of critical importance to the business and operations of the Company. Accordingly, the Consultant and the Individual shall, and shall cause their employees, agents and representatives to, use such Proprietary Information only in connection with the provision of the Consulting Services hereunder and shall not, without the express prior written consent of the Company, directly or indirectly disclose any Proprietary Information to any other person or use any such Proprietary Information, either directly or indirectly, for its benefit or for the benefit of any third party. Upon any termination or expiration of this Agreement, at the Company's request, the Consultant and the Individual shall, and shall cause their employees, agents and representatives to, return to the Company all Proprietary Information provided to the Consultant or the Individual by the Company, or its affiliates or customers and shall destroy all other Proprietary Information then in their possession or subject to their control and shall certify such destruction to the Company. Under no circumstances shall the Consultant or the Individual retain or permit their employees, agents and representatives to retain any copies of materials containing Proprietary Information, or any documents, notes, memoranda, studies, analyses or other material reduced to a tangible form containing Proprietary Information. The Consultant's and the Individual's obligations under this Section 5(a) shall survive any termination or expiration of this Agreement forever.

For purposes of this Agreement, "Proprietary Information" means information, observations and data concerning the business or affairs of the Company and its affiliates including, without limitation, all business information (whether or not in tangible form) which relates to the Company or its affiliates, or their customers, suppliers, vendors or contractors or any other third parties in respect of which the Company or its affiliates have a business relationship or owes a duty of confidentiality, or their respective businesses or products, and which is not known to the public generally other than as a result of the Consultant's or the Individual's breach of this Agreement, including but not limited to: product or services information, lesson plans, curricula and training manuals; financial models and analyses; trade

secrets; unwritten knowledge and "know-how"; customer lists; customer buying records and habits; sales records and documents, product and services development, marketing and sales strategies, market surveys, marketing plans; profitability analyses, long-range plans and information relating to pricing and competitive strategies; information relating to any forms of compensation or other personnel-related information; contracts; and supplier lists. For the avoidance of any doubt, any Proprietary Information created by the Consultant or the Individual in connection with the Consulting Services, including but not limited to any Work Product (as defined in Section 6(a) herein), shall be subject to the terms and conditions of this Section.

(b) The Consultant and the Individual acknowledge that all curricula, materials, lesson plans, training manuals, notes, memoranda, records, files, lists, drawings, documents, models, equipment, property, computer software or intellectual property relating to the Company's businesses in whatever form (including electronic), and all copies thereof, that are received or created by the Consultant or the Individual (including but not limited to Proprietary Information) are and shall remain the property of the Company, and the Consultant shall immediately return any such property (and/or any written documentation thereof) to the Company upon the expiration of this Agreement and, in any event, at the Company's written request.

**6. <u>Intellectual Property</u>.**

(a) The Consultant and the Individual recognize and acknowledge that the Company is and shall be, the sole and exclusive owner of all right, title and interest throughout the world in and to all the results, proceeds and work product of any kind that is conceived or made by the Consultant or the Individual during the Term of this Agreement and (i) results from tasks assigned to the Consultant or the Individual by the Company, its subsidiaries and affiliates and/or the performance of the Consulting Services hereunder or (ii) is conceived or made with the use of materials or ideas provided by the Company, its subsidiaries and affiliates, including but not limited to any product or services information or pricing, trade secrets, services, processes, know-how, designs, developments, techniques, formulas, methods, developmental or experimental work, improvements, discoveries, inventions, ideas, programs, writings and other works of authorship, including but not limited to, curricula, materials, songs, lyrics, recordings, lesson plans, training manuals, arrangements and games (collectively, the "Work Product"), including all patents, copyrights, trademarks, trade secrets and other intellectual property rights (collectively, "Intellectual Property Rights") therein. The Consultant and the Individual agree that all Work Product is hereby deemed a "work made for hire" as defined in 17 U.S.C. § 101 for the Company. If, for any reason, any of the Work Product does not constitute a "work made for hire", the Consultant and the Individual hereby irrevocably assign, and upon creation thereof shall be deemed to have automatically assigned, to the Company, in each case without additional consideration, all right, title and interest throughout the world in and to the Work Product, including all Intellectual Property Rights therein. For purposes of this Agreement and for the avoidance of any doubt, "Work Product" shall also include any preexisting materials contained in the Work Product or provided separately by the Consultant or the Individual in connection with the Consultant's performance of the Consulting Services. Notwithstanding the foregoing, pre-existing material contained in Work Product or otherwise provided separately by the Consultant or the Individual in connection with the Consultant's performance of the Consulting

Services shall not be deemed "Work Product" if (a) songs of Consultant and/or the Individual previously recorded on compact disc and listed on Schedule 6 hereto or (b) the Consultant or the Individual notify the Company in writing prior to or within five (5) days after the earlier of the delivery of such pre-existing material (or the Work Product in which it is contained) to the Company or the use thereof by the Consultant in the performance of the Consulting Services.

(b) Any assignment of copyrights under this Agreement includes all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as "moral rights" (collectively, "Moral Rights"). The Consultant and the Individual hereby irrevocably waive, to the extent permitted by applicable law, any and all claims each of them may now or hereafter have in any jurisdiction to any Moral Rights with respect to the Work Product.

(c) Upon the request of the Company, the Consultant and the Individual shall promptly take such further actions, including execution and delivery of all appropriate instruments of conveyance, as may be necessary to assist the Company to prosecute, register, perfect, record or enforce its rights in any Work Product. In the event the Company is unable, after reasonable effort, to obtain the signature of the Consultant or the Individual on any such documents, and in no event less than five (5) business days after the request, the Consultant and the Individual hereby irrevocably designate and appoint the Company as their agent and attorney-in-fact, to act for and on their behalf solely to execute and file any such application or other document and do all other lawfully permitted acts to further the prosecution and issuance of patents, copyrights or other intellectual property protected related to the Work Product with the same legal force and effect as if they had executed them. The Consultant and the Individual agree that this power of attorney is coupled with an interest.

(d) Neither the Consultant nor the Individual shall have the right or license to use, publish, reproduce, prepare derivative works based upon, distribute, perform, or display any Work Product without the prior written consent of the Company. Neither the Consultant nor the Individual shall have any right or license to use the Company's trademarks, service marks, trade names, trade names, logos, symbols or brand names except as otherwise agreed in writing between the parties.

(e) The Consultant and the Individual shall disclose all Work Product promptly to the Company and shall not disclose the Work Product to anyone other than authorized Company personnel without the Company's prior written consent. The Consultant and the Individual shall not disclose to the Company or induce the Company to use any secret or confidential information or material belonging to others.

**7. <u>Noncompetition; Nonsolicitation; Nondisparagement</u>.**

(a) The Consultant and the Individual acknowledge that during the Term, the Consultant and the Individual will become familiar with, the Company's Proprietary Information and that the Consulting Services will be of special, unique and extraordinary value to the Company and that the Company's ability to accomplish its purposes and to successfully pursue its business plan and compete in the marketplace depend substantially on the skills and expertise of the Consultant. Therefore, during the Term and for two (2) years thereafter (the "Restrictive

Period"), neither the Consultant nor the Individual shall, directly or indirectly, (i) (A) engage in, or (B) render services or give advice to (whether as an officer, director, employee, manager, agent, associate or consultant) or have any ownership or financial interest in any Competing Business, (ii) hire, solicit, entice away or cause or arrange for another to hire, solicit or entice away any Person that is a director, officer, manager, employee, consultant, independent contractor (other than Persons rendering legal, accounting or financial services) or agent of the Company or any of its affiliates, or (iii) cause the termination or diminishment of, or otherwise interfere with the Company's business relationship with, any of its customers, suppliers or vendors or any other Persons with which the Company interacts with respect to its business (each of (i), (ii) or (iii) referred to as "Competing").

For purposes hereof, "***Person***" means any individual, corporation, entity, business trust, partnership, joint venture, association, joint stock company, trust, unincorporated organization, enterprise, government or any agency or political subdivision thereof or other entity of whatever nature and "***Competing Business***" means any Person that is in the business of providing music and/or movement programs for children, families, adults and/or seniors, in-school programs for children through second grade and/or any other program which competes with the programs or services offered or proposed to be offered by the Company. Notwithstanding the foregoing, but subject in all events to the other terms of this Agreement, including Sections 5 and 6 above and any other agreement that may hereafter be entered into between the parties, it is understood and agreed that, to a similar extent and in generally the same area as currently engaged in by Tom Foote and/or Rhythm Kids as of the date hereof, (1) the Individual may continue to teach music students privately, perform drumming and rhythm activities at birthday parties and special events and lead school and church events that utilize African drumming and (2) the Consultant and/or the Individual may continue to offer music and drumming classes and workshops which are taught only by the Individual and/or by those teachers set forth on Schedule 7 hereto (as such schedule may be amended in writing from time to time by Consultant and the Company).

Nothing contained in this Section 7 shall prohibit the Consultant or the Individual from being a passive owner of not more than 10% of the outstanding stock of a corporation that is publicly traded, so long as neither the Consultant nor the Individual have an active participation in the business of such corporation.

(b) Neither the Consultant nor the Individual shall, whether in writing or orally, defame or materially disparage or criticize the Company or any of its affiliates and their respective predecessors and successors, or any of the current or former directors, officers, members, managers, employees, shareholders, partners, agents or representatives of any of the foregoing, with respect to any of their respective past or present activities, or otherwise publish (whether in writing or orally) statements that tend to portray any of the aforementioned parties in an unfavorable light.

(c) The Company shall not, whether in writing or orally, defame or materially disparage or criticize the Consultant or the Individual with respect to any of their respective past or present activities, or otherwise publish (whether in writing or orally) statements that tend to portray any of the aforementioned parties in an unfavorable light.

**8. Equitable Relief.**

(a) The Consultant and the Individual hereby acknowledge that (a) the Consulting Services to be rendered hereunder are of a special and unique character, (b) it would be difficult to replace such Consulting Services, (c) the material provisions hereof (including, without limitation, Sections 5, 6 and 7 hereof) are of crucial importance to the Company, (d) the Company shall consider (i) any breach or threatened breach of any material provision hereof to cause irreparable injury to the Company and (ii) money damages to be an inadequate remedy to the Company for any such breach or threatened breach. Accordingly, the Consultant and the Individual hereby acknowledge and agree that if either of them breaches or threatens to commit a breach of any of the material provisions hereof, the Company shall have the following rights and remedies, each of which rights and remedies shall be independent of the others and severally enforceable, and each of which is in addition to, and not in lieu of, any other rights and remedies available to the Company at law or in equity: (A) have the Consultant and/or the Individual enjoined (whether by temporary restraining order or temporary injunction (in either such instance without the posting of any bond or security) or by permanent injunction (with the posting of a bond or security)) by any court of competent jurisdiction from breaching or continuing to breach any material provision hereof; (B) have the material provisions hereof specifically enforced by any court of competent jurisdiction; and (C) require the Consultant and/or the Individual to account for and pay over to the Company (1) all compensation, profits, monies, accruals, increments or other benefits derived or received by the Consultant and/or the Individual as the result of any action or transaction constituting a breach of any material provision hereof and (2) all costs and expenses incurred by the Consultant and/or the Individual resulting from the Consultant's and/or the Individual's breach of any material provision hereof (including, without limitation, attorneys' fees and expenses in dealing with such breach or any suits or actions relating thereto) and for all damages (compensatory along with punitive) that may be awarded in connection therewith.

(b) The Company's obligation to make payments, or provide for any benefits under this Agreement shall cease upon a material breach by the Consultant and/or the Individual of any of the provisions of Sections 5, 6 or 7, but only after the Company has provided written notice of the material breach and the Consultant and/or the Individual has failed to cure the alleged breach with fifteen (15) days thereafter (unless such breach is incapable of being cured, in which such case, no cure period shall be required).

**9. Representations.**

(a) The Consultant represents and warrants to the Company that (i) the execution, delivery and performance of this Agreement by the Consultant has been duly authorized by all necessary corporate action; (ii) this Agreement is a valid and binding Agreement of the Consultant, enforceable against it in accordance with its terms; (iii) the Consultant has the required skill, experience and qualifications to perform the Consulting Services and shall perform the Consulting Services in a professional and workmanlike manner in accordance with the best industry standards for similar services and shall devote sufficient resources to ensure that the Consulting Services are performed in a timely and reliable manner; (iv) the Consultant shall perform the Consulting Services in compliance with all applicable

federal, state and local laws and regulations; (v) the Company will receive good and valuable title to all Work Product, free and clear of all encumbrances and liens of any kind; and (vi) all Work Product is and shall be the Consultant's original work (except for material in the public domain or provided by the Company) and does not and will not violate or infringe upon the intellectual property rights or any right whatsoever of any person or entity.

(b) The Company represents and warrants to the Consultant that (i) the execution, delivery and performance of this Agreement by the Company has been duly authorized by all necessary corporate action; and (ii) this Agreement is a valid and binding Agreement of the Company, enforceable against it in accordance with its terms.

**10. Indemnification.**

(a) The Consultant and the Individual shall jointly and severally defend, indemnify and hold harmless the Company and its affiliates and their officers, directors, managers, members, employees, agents, successors and permitted assigns from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind (including reasonable attorneys' fees) arising out of or resulting from: (a) bodily injury, death of any person or damage to real or tangible, personal property resulting from the acts or omissions of the Consultant or the Individual; and (b) the Consultant's or the Individual's breach of any representation, warranty or obligation under this Agreement.

(b) The Company may, but need not, satisfy such indemnity (in whole or in part) by way of deduction from any payment due to the Consultant hereunder.

(c) Excluding any matters covered by the Consultant's and the Individual's indemnity obligations set forth above, the Company shall defend, indemnify and hold harmless the Consultant, the Individual, and their respective members, employees, agents, successors and permitted assigns from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind (including reasonable attorneys' fees) arising out of or resulting from: (a) bodily injury, death of any person or damage to real or tangible, personal property resulting from the acts or omissions of the Company; and (b) the Company's breach of any representation, warranty or obligation under this Agreement.

**11. Termination.**

(a) If Company breaches a material provision of this Agreement, the Consultant and/or the Individual may terminate this Agreement upon 30 days written notice, unless the breach is cured within that period. Should the Consultant desire to terminate this Agreement for any other reason prior to the expiration of the Term, the Consultant may notify the Company in writing specifying the reasons for such request, and the Company may, at its option, accept or reject the request.

(b) The Company may terminate this Agreement at any time, with or without cause, upon two (2) weeks prior written notice to the Consultant, provided that, if the Company

terminates this Agreement for cause, no prior notice shall be required and the termination shall be effective immediately upon notice by the Company.

(c) Upon the expiration or termination of this Agreement, or at any time, with or without cause, upon the Company's written request, the Consultant shall within five (5) business days after such expiration or termination:

(1) Deliver to the Company all Work Product (whether complete or incomplete) and all other materials provided for the Consultant's use by the Company;

(2) Deliver to the Company all tangible documents and materials (and any copies) containing, reflecting or incorporating or based on the Proprietary Information;

(3) Permanently erase or cause to be erased all the Proprietary Information from the computer systems of the Consultant, its employees and its agents; and

(4) Certify in writing to the Company compliance with the requirements of this Section

(d) The terms and conditions of Sections 2(b), 3-8 and 10-19 shall survive the expiration or termination of this Agreement.

**12.** **<u>Severability</u>**. The invalidity of any portion hereof shall not effect the validity, force or effect of the remaining portions hereof. If it is ever held that any restriction hereunder is too broad to permit enforcement of such restriction to its fullest extent, each party agrees that a court of competent jurisdiction may enforce such restriction to the maximum extent permitted by law.

**13.** **<u>Benefits of Agreement</u>**. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective executors, administrators, successors and assigns. This Agreement may not be assigned by any party hereto without the prior written consent of the other party. Any assignment or purported assignment by the Consultant in violation of this Section shall be null and void.

**14.** **<u>Entire Agreement</u>**. This Agreement, together with any Royalty Agreement that may be entered into between the parties, if any, shall constitute the entire agreement among the parties with respect to the matters covered hereby and shall supersede all previous written, oral or implied agreements and understandings among the parties with respect to such matters.

**15.** **<u>Governing Law</u>**. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New Jersey without reference to the choice of law principles thereof. Each of the parties hereto irrevocably submits to the exclusive jurisdiction of the courts of the State of New Jersey and the United States District Court for the District of New Jersey for the purpose of any suit, action, proceeding or judgment relating to or arising out of this Agreement and the transactions contemplated hereby. Service of process in connection with any such suit, action or proceeding may be served on each party hereto anywhere in the world by the same methods as are specified for the giving of notices under this Agreement. Each

of the parties hereto irrevocably consents to the jurisdiction of any such court in any such suit, action or proceeding and to the laying of venue in such court. Each party hereto irrevocably waives any objection to the laying of venue of any such suit, action or proceeding brought in such courts and irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

**16.** **Amendment and Modifications**. This Agreement may only be amended or modified in writing signed by the party against whom enforcement of such amendment or modification is sought.

**17.** **Notices**. All notices and other communications hereunder shall be in writing and shall be delivered personally, mailed by certified mail, return receipt requested, postage prepaid, or delivered by reliable overnight delivery service (receipt confirmed), addressed to the recipient as first set forth above (or, with respect to a party hereto, at such other address as such party shall have furnished to the other party hereto in writing). Notices and other communications so delivered personally shall be deemed delivered when actually received. Notices and other communications so sent by certified mail or by overnight delivery service shall be deemed delivered and received three (3) business days after deposit in the U.S. mail or one business day after delivery of the same to such delivery service, as applicable.

**18.** **Titles and Headings**. The headings in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

**19.** **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original agreement, but all of which together shall constitute one and the same instrument.

[Signature page immediately follows]

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**MUSIC TOGETHER, LLC**

By: ____________________
Name: Kenneth K. Guilmartin
Title: Director

**INSTAGROOVE MUSIC, LLC**

By: ____________________
Name: Thomas Foote
Title: Manager

**THOMAS FOOTE**

____________________
Thomas Foote, individually

[Signature Page of Consulting Agreement]

4381983v7

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**MUSIC TOGETHER, LLC**

By:______________________________
Name: Kenneth K. Guilmartin
Title: Director

**INSTAGROOVE MUSIC, LLC**

By:______________________________
Name: Thomas Foote
Title: Manager

**THOMAS FOOTE**

______________________________
Thomas Foote, individually

[Signature Page of Consulting Agreement]

4381983v7

## Schedule 6

Commercially Released Songs of Consultant and/or the Individual

Drumming with the Animals - Owee Music (Kimmy Schwimmy artist)
Funga Alafia (arr. Tom Foote/Robert Duncan) - InstaGroove Music
Drum Like An Animal (Tom Foote) - InstaGroove Music
Africa Oh Africa (Tom Foote) - InstaGroove Music
Siyahamba (arr. Tom Foote/Robert Duncan) - InstaGroove Music
Kakilambe (arr. Tom Foote/Robert Duncan) - InstaGroove Music
Obwisana (arr. Tom Foote/Robert Duncan) - InstaGroove Music
Kuku Ey (arr. Tom Foote/Robert Duncan) - InstaGroove Music
Ayiko Aiko (arr. Tom Foote/Robert Duncan) - InstaGroove Music
Journey to Mali (Tom Foote) - InstaGroove Music
Dance All Day (Tom Foote) - InstaGroove Music

# Schedule 7

Permitted Teachers

Tom Foote

Greg Nikitas

Chris Beldon

Zach Nazar (who has moved to LA and may be replaced)

Alisha Ross (who is in Florida and may be replaced)

# EXHIBIT A-2

**From**: Deanna deCampos [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=8AEBE18A0E734F44B724AD9CDA0394D1-DDECAMPOS]
**Sent**: 10/26/2023 10:42:48 AM
**To**: Jill Perhach [jperhach@musictogether.com]; Ken Guilmartin [kguilmartin@musictogether.com]; Susan Darrow [sdarrow@musictogether.com]; Andy Tomlinson [atomlinson@musictogether.com]
**Subject**: FW: New song (SIH)

This is *re* Singing in Harmony.

Deanna deCampos
Director of Curriculum Development and Educational Services
Music Together Worldwide
MusicTogether.com
609-945-0397

On 1/12/17, 8:16 AM, "Tom Foote" <tfoote@musictogether.com> wrote:

Thanks for replying to these song recommendations. I texted an audio file for this song a few days ago. Can resend.

Sent from my iPhone

> On Jan 12, 2017, at 1:38 AM, Ken Guilmartin <kguilmartin@musictogether.com> wrote:
>
> Did you send me any audio for this?
>
>> On 12/26/16, 6:09 PM, "Tom Foote" <tfoote@musictogether.com> wrote:
>>
>> Justine and I would like to submit a doo wop song (triple meter) for the
>> next collection.
>>
>> TFoote
>>
>> Sent from my iPhone
>

# EXHIBIT A-3

**From**: Certification [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=CB78447B731F4350A63EC59AACF14CBD-CERTIFICATI]
**Sent**: 1/28/2025 3:19:17 PM
**To**: Andy Tomlinson [atomlinson@musictogether.com]; Jill Perhach [jperhach@musictogether.com]
**Subject**: FW: Singing in Harmony

From TF sent folder, see highlighted below…

---

**From:** Tom Foote <tfoote@musictogether.com>
**Date:** Tuesday, January 24, 2017 at 2:47 AM
**To:** Jonathan Galletti <jgalletti@musictogether.com>
**Cc:** Ken Guilmartin <kguilmartin@musictogether.com>, Catherine Judd Hirsch <cjudd@musictogether.com>
**Subject:** Re: Singing in Harmony

Will look into the note clashing, but the song is written by Tom Foote and Justine Chadly.

Sent from my iPhone

On Jan 23, 2017, at 11:10 PM, Jonathan Galletti <jgalletti@musictogether.com> wrote:

Here is a draft for SIH. There are two places where note clashing occurs between parts, from what I interpreted in Tom's audio he sent. It seems like an adjustment in the melody would fix it:

1. The second staff, first measure, the eighth note in beat 2
2. Last measure, beats 2 and 3. The suspension/resolution is fine on beat 3, but the melody sort of rides on a second above the harmony for a few too many notes, causing a bit of a clash.

Sincerely,
Jonathan Galletti
Program Support Specialist
Music Together LLC
jgalletti@musictogether.com
www.musictogether.com

<SongTiger-SinginginHarmony-Draft1.pdf>

# EXHIBIT A-4

**From**: Tom Foote [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=42F9EF353B6047BF9BC6B928C059CE51-TFOOTE]
**Sent**: 6/7/2017 12:25:21 PM
**To**: Ken Guilmartin [kguilmartin@musictogether.com]
**CC**: Catherine Judd Hirsch [cjudd@musictogether.com]
**Subject**: Together We Go (Title TBD)

Justine and I spoke the other day about other lyric ideas and here are a few we came up with together. Also, we thought body percussion would work well in the same way with Hey, Ho Nobody Home (like we spoke about last week) and then thought that a cool circle-time LM activity might work really well with the three different parts of the song. I'll explain the basic idea next time we talk.

Original Lyrics:

**Vocal Part 1**
Around the world, we sing hello.
Hand-in-hand, together we go.

Vocal Part 2 (remains the same)
La, la, la…

Vocal Part 3 (remains the same)
Hey, hey, hey...

**Vocal Part 1 Alternate Suggestions:**

- We dance and drum and sing hello. Hand-in-hand, together we go.
- You and I, we sing hello. Hand-in-hand, together we go

We are also working on a "sharing/connection" idea of together we grow… more on that later. Bit of work left to do, but we're very close.

Thank you,

Tom Foote
Program Developer - Rhythm Kids
Music Together LLC
Princeton NJ USA
800-728-2692
tfoote@musictogether.com
www.musictogether.com

# EXHIBIT A-5

Outlook

## Hand-in-Hand

**From** Tom Foote <tfoote@musictogether.com>
**Date** Thu 6/8/2017 10:17 AM
**To** Ken Guilmartin <kguilmartin@musictogether.com>

Hey Ken,

I was thinking about the song Justine and I wrote that was getting the feeling that you're not feeling this one. I personally like the melody, the three parts and the music learning ideas that we have come up with to go with the song. Maybe I perceived it incorrectly, but I do think it would make a good song for the RK program. It has a rhythmic sense and I was thinking maybe an island feel (ala: singing every day) could be the genre.

We are both open to lyric ideas (I feel like I offered several variations). We could take this in any direction that is needed.

More body percussive prompts: Clap, clap high five hello. Hand-in-hand is the way we go

Different endings: "in/with music we grow" or "in song we grow"

just vocables
cup passing activity
circle dance

Off to the studio!

Tom Foote
Program Developer - Rhythm Kids
Music Together LLC
Princeton NJ USA
800-728-2692
tfoote@musictogether.com
www.musictogether.com

# EXHIBIT A-6

[redacted]

**From:** Tom Foote <tfoote@musictogether.com>
**Date:** Monday, June 12, 2017 at 2:06 PM
**To:** Jonathan Galletti <jgalletti@musictogether.com>
**Cc:** Ken Guilmartin <kguilmartin@musictogether.com>, Catherine Judd Hirsch <cjudd@musictogether.com>
**Subject:** Lyrics for Songs You'll Get Today

Hi Jon,

Here are the lyrics for the songs you will be receiving today.

**Everyday's a Good Day**
by Tom Foote arr KKG

Singing in the morning, when the rain comes (2x)
Everyday's a good day, when you're making me music

Singing in the noon time, when the sun shines (2x)
Everyday's a good day, when you're making me music

Whoa oh oh (echo)

Everyday's a good day and we be a jammin'
Everyday's a good day and the beat is slammin'
Three little birds are singing all day
This party is rocking so you know we're gonna stay and play

Singing in the evening, when the wind blows (2x)
Everyday's a good day, when you're making me music

Singing with my friends now, when the sun sets
Singing with my friends now, when the sun comes up
It's a good day, when you're making me music

Everyday's a good day (when I'm dancing/when I'm singing/when I'm playing)

**Hand-In-Hand**
by Justine Chadly & Tom Foote arr KKG

Around the worlds, singing hello.
Hand-in-hand, together we go

La, la, la la la

Hey, hey, hey

**Taba Naba**
Traditional Australian Song arr KKG

Taba naba, naba norem
La, la, la, la, la (or on "na" — we're decided now)
La la…etc
Taba naba norem

Tom Foote
Program Developer - Rhythm Kids
Music Together LLC
Princeton NJ USA
800-728-2692
tfoote@musictogether.com
www.musictogether.com

# EXHIBIT A-7

**From**: Deanna deCampos [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=8AEBE18A0E734F44B724AD9CDA0394D1-DDECAMPOS]
**Sent**: 10/26/2023 11:32:21 AM
**To**: Jill Perhach [jperhach@musictogether.com]; Ken Guilmartin [kguilmartin@musictogether.com]; Susan Darrow [sdarrow@musictogether.com]; Andy Tomlinson [atomlinson@musictogether.com]
**Subject**: FW: Singin' My Song Draft Chart (credits TF JC)
**Attachments**: Singing My Song Draft Notation PDF.pdf; ATT00001.htm

Draft notation has credits for both TF and JC.

**Deanna deCampos**
*Director of Curriculum Development and Educational Services*
Music Together Worldwide
MusicTogether.com
609-945-0397

---

**From:** Tom Foote <tfoote@musictogether.com>
**Date:** Thursday, January 11, 2018 at 8:04 PM
**To:** Ken Guilmartin <kguilmartin@musictogether.com>
**Subject:** Singin' My Song Draft Chart

Hello Ken,

Sorry this is a bit late. I had found a few mistakes with chords, etc., but it looks better now. Decided to keep the simpler yeah, yeah on the verses—just sounded better. And then on the CODA, or the interlude (not sure what it is at this point) will include that line with the C- to F- progression with the A walk down bass and vocal line.

Let’s talk. Really starting to dig this song! Getting better each time.

Swing Feel

# Singin' My Song

T Foote & J Chadly



# EXHIBIT A-8

**From:** Tom Foote [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=42F9EF353B6047BF9BC6B928C059CE51-TFOOTE]
**Sent:** 3/1/2018 2:00:12 PM
**To:** Ken Guilmartin [kguilmartin@musictogether.com]
**Subject:** Re: Heads up re Singin' My Song notation

Checked it and showed it to Justine. Thumbs up from both of us!!

Tom Foote
Program Developer - Rhythm Kids
Music Together LLC
Princeton NJ USA
800-728-2692
tfoote@musictogether.com
www.musictogether.com

On Mar 1, 2018, at 8:09 AM, Ken Guilmartin <kguilmartin@musictogether.com> wrote:

Hi Tom, you should take a "last" look at the song page for SMS, draft 3 attached. With the changes outlined below it should be "final", at least for posting tomorrow!

The audio attached is an older rough mix resent to Jon just to make the ending melody line clear.

**Kenneth K. Guilmartin**
Founder/Artistic Director
Music Together Worldwide
609-945-0314
musictogether.com

**From:** "Kguilmartin@Musictogether. Com" <kguilmartin@musictogether.com>
**Date:** Thursday, March 1, 2018 at 11:03 AM
**To:** Jonathan Galletti <jgalletti@musictogether.com>
**Cc:** Catherine JH <cjudd@musictogether.com>, Emily Heinz <eheinz@musictogether.com>, Marcel Chouteau <mchouteau@musictogether.com>
**Subject:** Re: Heads up re Singin' My Song notation

Odd! Just to be clear, I'm attaching the early version I thought you had that makes the line clear.

The following touch-ups should put this in shape for posting tomorrow:

The tempo description seems fine.

We don't need the "Repeat first time only" note anymore.

I think the final notes of the main melodic phrase should be quarter notes rather than half-notes (bars 8, 12, 20 and in the coda).

Bar 21 needs staccato marks as in the intro.

The repeat marks on the second bar of the coda should be removed.

Should the first bar of the 2-bar "repeat ad lib" sketch have a middle C quarter note and a "yeah" in parentheses?

That's it!

**Kenneth K. Guilmartin**
Founder/Artistic Director
Music Together Worldwide
609-945-0314
**musictogether.com**

---

**From:** Jonathan Galletti <jgalletti@musictogether.com>
**Date:** Sunday, February 25, 2018 at 1:06 PM
**To:** "Kguilmartin@Musictogether. Com" <kguilmartin@musictogether.com>
**Subject:** Re: Heads up re Singin' My Song notation

Draft 3.

I must not have the latest recording. In mine, they sing the last yeahs of the verse, go to the coda and sing the G-F-F-F-C again, then finish off with the G-C-C-C-C two times and the song ends. There is not another 2 bars which have the Eb-C-C-C-C! I put it in there for you, but we might want to verify that it will be in the final recording.

Sincerely,
Jonathan Galletti
Program Support Specialist
Music Together LLC
jgalletti@musictogether.com
www.musictogether.com

---

**From:** Ken Guilmartin <kguilmartin@musictogether.com>
**Date:** Saturday, February 24, 2018 at 9:47 PM
**To:** Jonathan Galletti <jgalletti@musictogether.com>
**Subject:** Re: Heads up re Singin' My Song notation

# EXHIBIT A-9

**From**: Tom Foote [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=42F9EF353B6047BF9BC6B928C059CE51-TFOOTE]
**Sent**: 5/16/2018 7:23:12 AM
**To**: Jonathan Galletti [jgalletti@musictogether.com]
**CC**: Ken Guilmartin [kguilmartin@musictogether.com]
**Subject**: Re: Let Me Hear You draft

This looks like a good start. I will confirm with Justine Chadly who should be added as a co-songwriter.

TFoote

Sent from my iPhone

On May 16, 2018, at 12:16 AM, Jonathan Galletti <jgalletti@musictogether.com> wrote:

Here is a first draft for Let Me Hear You.

Sincerely,
Jonathan Galletti
Program Support Specialist
Music Together LLC
jgalletti@musictogether.com
www.musictogether.com

<SongAlligator-LetMeHearYou-Draft1.pdf>

# EXHIBIT A-10

**From**: Tom Foote [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=42F9EF353B6047BF9BC6B928C059CE51-TFOOTE]
**Sent**: 7/2/2018 1:56:14 PM
**To**: Emily Heinz [eheinz@musictogether.com]
**CC**: Ken Guilmartin [kguilmartin@musictogether.com]; Marcel Chouteau [mchouteau@musictogether.com]
**Subject**: Re: RK Alligator CD Label Approval

Not sure how this all works. If crediting songwriters, then Justine Chadly co-wrote Let Me Hear You. If just program developers, then it seems fine.

Sent from my iPhone

On Jul 2, 2018, at 11:47 AM, Emily Heinz <eheinz@musictogether.com> wrote:

Hi, Ken and Tom!

Please see attached for the label and cover that Jennifer put together for the RK Alligator CD. The Alligator artwork is not yet finalized, but I wanted to go ahead and get your notes about this.

We did have one question about the composer credits. Is the order below correct or should it be different for RK CDs?

<image001.png>

Also, for the CD Cover, is the following accurate for RK?

<image003.jpg>

Thanks!

Emily

**Emily Heinz**
Production and Logistics Assistant
Music Together Worldwide
musictogether.com
609-527-3174

<Alligator-L1-CD-Label_6.28.18-White.pdf>
<Alligator-L1-CD-Cover_6.29.18.pdf>

# EXHIBIT A-11

# Song Purchase Agreement

As we wait to execute a more formal document currently under preparation, Tom Foote and Justine Chadly, Co-authors, and Music Together LLC, Publisher, represented by its owner Kenneth K. Guilmartin, wish to acknowledge and indicate in writing their verbal agreements and consequent actions since approximately August of 2016 and continuing to the present day.

Chadly and Foote (Co-authors) have created the songs "'Bout My Friends" and "Singing in Harmony" and have agreed to sell all rights to these songs to Music Together LLC, Publisher, for use in its educational programs and any other use it may choose in perpetuity. The Co-authors warrant that these are indeed original works and do not contain elements copyrighted or owned by any other party.

Based on these verbal agreements, and in mutual trust, Music Together developed, produced and distributed to the public print, audio and video versions of "'Bout My Friends" during the fall of 2016 and is currently undertaking the same efforts on behalf of "Singing in Harmony."

The current standard fee that Music Together pays for such songs with both music and lyrics is $350 per song. Consequently, Chadly and Foote will each receive $175 per song upon the execution of the final version of the contract now under preparation.

Co-authors acknowledge that this payment is final, and that no other payments are or will become payable for any use of the songs except the following: should Publisher receive income from any non-educational use of the songs outside of Music Together (or its successors or assigns), Co-authors and Publisher will share in this income according to typical industry standards as detailed in the formal agreement under preparation.

Agreed January 29th, 2017 by:

_______________________________
Justine Chadly, Co-author

_______________________________
Tom Foote, Co-author

_______________________________
Kenneth K. Guilmartin, Music Together LLC