UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUSTINE CHADLY,

    Plaintiff,

  v.

MUSIC TOGETHER, LLC,

    Defendant.

No. C 24-01096 WHA

**ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

## INTRODUCTION

In this copyright and contract action, the parties cross-move for partial summary judgment. The motions are denied as to all but two issues.

## STATEMENT

Defendant company offered a music school kit to music school operators — licensing children's music and marketing materials. Plaintiff musician operated one such music school as a licensee. And, she either created or co-created songs that the company then distributed to other music schools. Then their business relationship ended.

At issue in this litigation is whether the company ever acquired the rights to four songs of plaintiff. In February 2024, plaintiff musician, Justine Chadly, brought suit against defendant company, Music Together LLC. The company moved to transfer venue or to dismiss, then withdrew both motions (Dkt. No. 44; *see also* Dkt. No. 39). It counterclaimed. Plaintiff moved to dismiss before withdrawing her motion, too (*see* Dkt. Nos. 71, 73). Finally, the

company moved to join a thirty party — musical consultant Thomas Foote — whom it said it had engaged to create works and who it said had co-created the works at issue. But, after plaintiff supplied this third party's declaration denying that he had been "a writer or co-writer of any of these four songs," the company said there was no basis for joinder (*see* Dkt. No. 77).

Now, both sides cross-move for partial summary judgment on various claims and counterclaims (Dkt. Nos. 86, 88; *see also* Dkt. No. 83 (stipulated amendment)). This is the first substantive order in our proceedings. This order follows full briefing, supplemental briefing (*see* Dkt. Nos. 98, 100–01), and a hearing.

## ANALYSIS

The claims and counterclaims are festooned with disputed facts. The parties provide over 3,000 pages of record and briefing mainly about one children's song. This flowering of alternative facts precludes summary judgment for either side — except as to two issues below. This order expands on what was said from the bench to memorialize the major points as the parties proceed to trial.

1. **COPYRIGHT OWNERSHIP, INFRINGEMENT, AND ACCOUNTING?**

    A. **"SINGING IN HARMONY"?**

Both sides claim to own this song's copyright in full and to find the other side infringing (Claims I, VI, VII; Counterclaims I, V, VI). For a copyright owner to emerge victorious at trial, it must prove (1) ownership of a valid, exclusive copyright, (2) copying of substantial, original elements, and (3) entitlement to any statutory or actual damages sought. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); 17 U.S.C. §§ 501, 502, 504. And, it must withstand the other side's effort to prove co-ownership or license.

Here, both sides seek summary judgment on both sides' claims. To win here, one must show that every reasonable jury would conclude it meets every element above, even after adopting all reasonable views of our record that favor the opposite side. *See Fair Hous. Council of Riverside Cnty. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). That feat is impossible here. Just take ownership:

Music Together might have become an owner if it hired the musical consultant Foote to create works and if Foote then co-authored "Singing In Harmony" with Chadly. *See* 17 U.S.C. § 201(a)–(b). Music Together says that is just what happened: It says that it engaged Foote in 2013, that their engagement contract contained an intellectual property assignment clause, and that Foote in fact was the co-creator of "Singing In Harmony," thereby making Music Together its co-author and co-owner under the Copyright Act. Can we say for sure? No. Even Foote disputes Foote's role in the songwriting. At the time, he said one thing. Now, he says another. At the time, he was Music Together's consultant. Now, he is Chadly's fiancé. What will Foote say next, in the crucible of cross-examination and under oath?

Or, Music Together might have become an owner if it purchased the work from Chadly. *See id.* §§ 201(d), 204(a). In January 2017, Chadly and Music Together's president, Ken Guilmartin, signed a "Song Purchase Agreement." But it said she would "receive $175 per song upon the execution of the final version of the contract now under preparation," and referenced "Singing In Harmony" and one other song not at issue here, "Bout My Friends" (Dkt. No. 88-4, MT Br. Exh. A-3). By one reading, this was an agreement to agree, which anticipated as a condition for any eventual copyright transfer the execution of a long-form agreement. Consistent with that understanding, when no long-form agreement was presented, no payment to Chadly was made. This went on until December 2017, when Chadly emailed to ask when she would get paid (Dkt. No. 88-9, MT Br. Exh. D-2; *see* Dkt. No. 88-36 (decl.)). In February 2018, Music Together's chief operating officer, Andy Tomlinson, restated the just-noted feature of the "Song Purchase Agreement," then sent a check for $350 ($175 times two):

> The Song Purchase Agreement that you signed for Bout My Friends and Singing in Harmony references a more complete agreement that has yet to be finished, which I will get done asap. In the interim, we will go ahead and send a check for those two songs based on the Purchase Agreement. The more complete agreement will also include Hand in Hand.

(Dkt. No. 88-10, MT Br. Exh. D-3). That check was cashed by Chadly in March 2018 (Dkt. No. 88-24, MT Br. Exh. F at 7; Dkt. No. 86-20, Chadly Br. Exh. 18). Chadly refuses to admit that the $350 check was for the two songs, although she has no specific alternative explanation.

3

Finally, Music Together's estoppel-type defenses are likewise premised on disputed facts. Yes, Chadly signed the "Song Purchase Agreement," which had named Foote (who worked for defendant) as *co-author* of "Singing In Harmony." Could such statements and conduct from Chadly have led Music Together to rely on Foote being co-creator and so on its ownership via a work for hire? Chadly says just the opposite: Music Together knew Chadly didn't understand the words Music Together had penned.

The cross-motions for summary judgment for "Singing in Harmony" (Claims I, VI, VII, in part; Counterclaims I, V, VI) are **DENIED**.

### B. "HAND IN HAND," "LET ME HEAR YOU," AND "SINGING MY SONG"?

No purported purchase agreement covers these works. But other problems in our disputed record do. Cross-motions for summary judgment for "Hand in Hand," "Let Me Hear You," and "Singing My Song" (Claims I, VI, VII, in part) are **DENIED**.

### 2. BREACH OF THE FRANCHISE LICENSE?

Music Together asserts that Chadly breached the franchise-type license agreement governing her use of Music Together's marketing and music materials when she stopped paying Music Together but kept offering music classes, starting with her summer semester classes (Counterclaims III) and continuing into her fall semester ones (Counterclaims IV). To prevail at trial, Music Together will have to prove (1) there was a contract and (2) Music Together performed but (3) Chadly did not, (4) causing damage. *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011).

### A. SUMMER SEMESTER 2023?

The parties cross-move for summary judgment as to the summer semester (Counterclaim III). To prevail here, Music Together must prove all elements — or Chadly must disprove at least one of them — even when the record is drawn to favor the other side. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03, 1107 (9th Cir. 2000); *Fair Hous. Council*, 249 F.3d at 1136. The parties treat California law as applying. The

parties seem to agree that Chadly offered at least one music class before the earliest date that the franchise agreement could have terminated. They dispute just about everything else.

In particular, they debate whether per-class, per-family service fees became payable (1) if Chadly held music classes during the contract term at all (they seem to agree she did), (2) if Chadly used Music Together's marketing, music, and/or curriculum in conjunction with those classes (she might have), or (3) if Chadly actually placed "an order" for something from Music Together in conjunction with those classes (she says no) — or *only* if one, another, or some combination of these conditions was met. An incomplete record and minor ambiguities of contract language have ballooned into today's disagreements that cannot be resolved in this posture (*see* §§ 4(a)–(b), B).*

Chadly's alternative argument that a non-compete cannot be enforced to penalize her for offering competing music classes is not a clear winner, either, in this posture. Chadly does not distinguish between in-term and post-term non-competes. The license agreement does (§ 3(g)(iii); *see also* § 7(a)). "[I]n-term covenants not to compete in exclusive dealing agreements are not per se invalid." *See, e.g.*, *Quidel Corp. v. Superior Ct.*, 57 Cal. App. 5th 155, 169 (2020). This is a factually sensitive determination that cannot be decided on this record. *Cf. ibid.* Relatedly, Chadly emphasizes that she did not place "an order," which according to her reading of the contract was required even for service fees to become due, such that according to her she cannot possibly owe anything in any eventuality. This order need not decide that contract language just yet. It is enough to point out that *in our posture* the point is moot, because if the in-term non-compete were enforceable — an open question so far — then one potential measure of damages for violating it might be the service fees that Chadly would have paid had she placed such "an order" to offer classes through Music Together.

Finally, Chadly's argument that whatever the terms were they were unenforceable because she signed under duress — as absurd as the argument may be — cannot be decided on our record.

---

* All bare section marks cite the franchise agreement's sections while all bare capitalized letters cite its exhibits (Dkt. No. 88-11, MT Br. Exh. D-11).

5

The cross-motions for summary judgment for breach of license related to Chadly's summer semester classes (Counterclaim III) are **DENIED**.

### B. FALL SEMESTER 2023?

Only Chadly moves for summary judgment as to the fall semester (Chadly Br. ii; MT Br. vi; *see* Counterclaim IV). So, the evidence is taken in the light most favorable to Music Together. Besides repeating the points above, Chadly's fresh point is that the contract language and our record conclusively show that the contract terminated before fall semester. Music Together disagrees.

The license agreement contained separate provisions for each party. For termination by the licensee, it stated Chadly "must provide [Music Together LLC] with at least 90 days written notice of [her] intention to terminate" (§ 5(b)). For termination by the licensor, however, it stated that the term simply "shall end on the first of any of the following reasons," including (A) "Licensee fails to pay any fees, costs, or the like due MTLLC or its affiliates," (B) "Licensee has directly or indirectly caused a transfer, sale, assignment or the like of this Agreement," and (C) "Licensee fails to utilize and order the Program products for more than one semester (as defined by MTLLC)" (§ 5(a)). Relevant to these, the agreement permitted only Music Together to waive "any breach by Licensee," without any such waiver "restrict[ing] or prevent[ing] MTLLC from enforcing it[s] rights" later (§ 7(b)).

As for what happened here, Music Together argues that *the licensee terminated* because Chadly purportedly provided Music Together with clear notice on July 26, 2023, making termination effective 90 days later in October 2023, after fall semester had started (*see* MT Opp. 19). By contrast, Chadly argues that *the licensor terminated* because a trigger prompted automatic termination, Music Together stated it would waive automatic termination only if further conditions were met, and those were not met (*see* Chadly Reply 12).

One email sent from a Music Together higher-up to Chadly is central to this dispute (MT Br. Exh. M-6) (nits original):

> I have several concerns which are all serious violations of your license agreement:

6

- Enrolled families are not getting the semester materials
- Music Together intellectual property is being used without service fee payment
- Music Together branding has been removed from your website
- You may be running an early childhood music class this summer that is not a Music Together program, and if so, that would be a violation of the competing program restriction in the license agreement

Our preference is that you continue as a licensee, as we value you as a part of our community. To do so, however, you need to do the following by Sunday, July 23rd

1. Update your website with appropriate branding as per the Brand and Trademark Rulebook
2. Order materials (by July 23 at the latest) and distribute them to enrolled families. Keep in mind that shipments dispatched later than July 24th may be interrupted by a potential August 1st UPS strike
3. Discontinue any other early childhood music education class/program[.]

*As Chadly sees it*, Music Together's email stated that license violations had occurred, some of which she says were on the list of termination events. And, even if it stated those violations would be waived if Chadly met conditions, all agree she didn't meet them. So, according to her, the license terminated July 23, 2023 (*see* Chadly Reply 12). *As Music Together sees it*, Chadly's failure to meet those conditions merely called Music Together's bluff. Music Together decided to waive any violations triggering automatic termination anyway — leaving Chadly's voluntary termination to take effect in 90 days after a July 26 email where it says she made clear she wanted Foote to take her license instead (*see, e.g.*, Dkt. No. 88-26, MT Br. Exh. G-13 at ECF 9). Other emails in our record could be read to support one view or another.

Alternatively, Chadly seems to argue that a non-compete during a 90-day notice period should be treated not as an in-term non-compete but as a post-term one to the extent the notice period serves only to operationalize the non-compete, and argues it should be found unenforceable. But the dispute as to the termination date and as to what exactly took place up until any termination date makes reaching this legal question premature. (Music Together does not attempt to enforce the express, post-term non-compete of six months (§ 3(g)(iii)).)

Chadly's motion for summary judgment for breach of license related to fall semester classes (Counterclaim IV) is **DENIED**.

### 3. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS?

Only Music Together moves for summary judgment on Chadly's claim that Music Together tortiously interfered with her contractual relations with teachers and customers (Claim II). So, the evidence here is taken in the light favorable to Chadly — as is true for every issue from here on.

At trial, Chadly must prove (1) a valid contract between plaintiff and a third party, (2) defendant's knowledge of this contract, (3) defendant's intentional acts designed to induce breach or disruption of the contractual relationship, (4) actual breach *or disruption* of the contractual relationship, and (5) resulting damage. *PG&E Co. v. Bear Stearns & Co.*, 791 P.2d 587, 589–90 (Cal. 1990). Music Together needs to disprove any one.

*First*, Music Together argues that recruiting away at-will employees breaches no contract, and without breach there can be no tortious interference with contractual relations (MT Reply 9–10 (citing *Reeves v. Hanlon*, 95 P.3d 513 (Cal. 2004))). Not so. The California Supreme Court holds the opposite in the very case Music Together cites: "[W]e reject [the] categorical holding that an employer may never maintain a cause of action against a competitor for intentional interference with its at-will employment relations." *Reeves*, 95 P.3d at 521. Relatedly, Music Together asserts that if Chadly meant to plead tortious interference with prospective economic advantage, she failed to do so and her original claim of tortious interference with contractual relations must be dispatched for this defect. Again, not so. That distinction is without a difference in California: "[W]e hold that a plaintiff may recover damages for intentional interference with an at-will employment relation under the same California standard applicable to claims for intentional interference with prospective advantage." *Id.* at 1152–53 (also explaining relevant elements); *see also id.* at 1144–45.

*Second*, Music Together appears to argue that, regardless, there is no evidence of wrongful conduct in Music Together's recruitment of Chadly's employees and customers. It cites a decision where an alleged tortfeasor was not found to have done any wrongful acts as to

8

1    the complainant (MT Reply 9–10 (citing *Davis v. Nadrich*, 174 Cal. App. 4th 1 (2009))). But a
2    jury could find otherwise here. Chadly points to some evidence suggesting that Music
3    Together used its ongoing access to what Chadly says was her proprietary business information
4    in order to persuade employees and customers to leave her (Chadly Opp. 17–19 (collecting
5    citations)). And, Music Together wrote to Chadly's employees in *August 2023* seemingly to
6    tell them that, like Chadly, they "do not have permission to use the program, curriculum,
7    brand, and trademarks" and thus would be liable to Music Together if they kept teaching with
8    Chadly — while elsewhere seemingly representing that Chadly's license would remain active
9    into *October 2023*. So which was it? At least on some constructions of our disputed record, a
10   jury could find Music Together penned false statements concerning Chadly to third parties in
11   order to disrupt their relations with Chadly.

12   Music Together's motion for summary judgment on tortious interference with contractual
13   relations (Claim II) is **DENIED**.

14   **4.    TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE?**

15   Likewise, only Music Together moves for summary judgment on Chadly's claim that it
16   tortiously interfered with the sale of her music school to Foote. The parties' briefing rehashes
17   the arguments above. It is replete with record citations supporting either side.

18   Music Together's main additional point is that, in its view, the record discloses no precise
19   details and no price it considers reasonable for the planned transaction. But those arguments
20   are about the scope or size of benefit. So far, they stop short of disproving that there was "[a]
21   probability of future economic benefit." *See Korea Supply Co. v. Lockheed Martin Corp.*, 63
22   P.3d 937, 950 (Cal. 2003) (cleaned up); *id.* at 957; *see also Pardi v. Kaiser Found. Hosps.*, 389
23   F.3d 840, 852 (9th Cir. 2004) (applying *Youst v. Longo*, 729 P.2d 728, 733 (Cal. 1987)).

24   Music Together's motion for summary judgment on tortious interference with
25   prospective economic advantage (Claim III) is **DENIED**.

26   **5.    VIOLATIONS OF SECTION 17200?**

27   Only Music Together moves for summary judgment on Chadly's claim that its actions
28   violated Section 17200 of the California Business and Professions Code.

9

*As to unfair acts*, Music Together contends Chadly can't show incipient harm to competition, citing *Cel-Tech Communications, Inc. v. L.A. Cellular Telephone Co.*, 973 P.2d 527 (Cal. 1999). Chadly does not argue otherwise as to this specific claim (Chadly Opp. 21–22). Music Together's motion for summary judgment as to "unfair" acts under Section 17200 (Claim IV, in part) is **GRANTED**.

*As to unlawful acts*, Music Together's arguments are conclusory (MT Reply 13). Chadly's claims above have survived, and if proven at least one of them could serve as a predicate act for this prong. Music Together's motion for summary judgment as to "unlawful" acts under Section 17200 (Claim IV, in part) is **DENIED**.

### 6. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS?

Only Music Together moves for summary judgment on Chadly's claim of intentional infliction of emotional distress (Claim V). At trial, Chadly would have to show that Music Together (1) did outrageous acts (2) with at least reckless disregard for her emotional distress and (3) actually and proximately caused (4) her to suffer severe emotional distress. *See Davidson v. City of Westminster*, 649 P.2d 894, 901 (Cal. 1982); *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004). To avoid trial, Music Together needs to show that one or more of these elements *must* be decided in its favor. Here, it succeeds.

Chadly says that she's experienced severe emotional distress (*e.g.*, Chadly Opp. Exh. 31 at 344 (suicidal ideation)). And, Music Together so far has not argued about whether it acted with reckless disregard for that distress (*see* MT Br. 20–23 (omitting)). Instead, Music Together argues its conduct was *not* the cause of this distress, nor outrageous (*ibid.*).

*First*, Chadly points to bad business conduct. She asserts Music Together attempted to take ownership of her songs through fraudulent inducement, retaliated for her refusal to sign them over, forced her to sign a "harsher" franchisee license, appropriated her confidential business information to benefit her rivals, and otherwise acted as a bad business partner (*see* Chadly Opp. 24). Chadly cites, for example, her statement that, whether or not she had asked at the time, "I was not offered an opportunity to take the agreement home or review it with an attorney" (Dkt. No. 86-1, Chadly Decl. ¶ 6). She cites copyright registrations obtained by

10

Music Together. She cites other such evidence. Even construing all this evidence and more for Chadly, these are commercial wrongs, not conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson*, 649 P.2d at 901.

Chadly's citations to prior decisions where a softer standard was applied to otherwise commercial conduct because the alleged torturer knew the tortured to be especially susceptible to distress are not persuasive. All still involved conduct more extreme than anything suggested in our record. *E.g.*, *Chaconas v. JP Morgan Chase Bank,* 713 F. Supp. 2d 1180, 1183, 1187–88 (S.D. Cal. 2010) (Judge William Hayes) (debt collector trying to make harassing contact to a disabled senior more than once daily on average for eight months, instead of calling senior's lawyer); *Bundren v. Superior Ct.*, 145 Cal. App. 3d 784, 791–92 (1983) (hospital's debt collector calling to extract payment from in-patient by threatening to oust him from hospital).

*Second*, Chadly points to repugnant racial remarks by Music Together's President Guilmartin at a conference she attended in May 2019. These remarks were made outside the statutory period and thus are not actionable here. Cal. Civ. Proc. Code § 335.1; *cf. Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 875–76 (Cal. 2013) (ordinary accrual rule). Even assuming they were outrageous, *see e.g.*, *Alcorn v. Anbro Eng'g, Inc.*, 468 P.2d 216, 218–19 (Cal. 1970), they are beyond redress these many years later.

*Finally*, Chadly attempts to connect the long-past, repugnant racial remarks to the recent, run-of-the-mill business conduct to create an addressable tort under the continuing violations doctrine. But the instances Chadly cites where this doctrine was applied to distressing conduct over an extended period have all involved ongoing conduct of the same kind — such as ongoing sexual harassment respecting a person's sexual orientation. *E.g.*, *Murray v. Oceanside Unified Sch. Dist.*, 79 Cal. App. 4th 1338, 1363–64 (2000). The doctrinal exceptions Chadly points to all take specific circumstances — late discovery, interim pursuit of alternative actions in good faith, and so on — that are entirely absent here. *E.g.*, *Aryeh*, 292 P.3d at 875–76 (ordinary rule and list of exceptions); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670–71 (2014) (similar).

1    Music Together's motion for summary judgment as to intentional infliction of emotional
2    distress (Claim V) is **GRANTED**.

### 7. OTHER MOTIONS.

#### A. EVIDENTIARY OBJECTIONS?

Chadly objects to some evidence presented by Music Together (Dkt. No. 91). For example, Chadly objects that Music Together's agreement with Foote for consulting work is irrelevant. But it *is relevant* to whether Music Together hired Foote to create works, and thus whether Music Together became owner of any work at issue. That objection is **OVERRULED**. All other objections are **DENIED AS MOOT**. This is without prejudice to renewing objections at trial.

#### B. REQUESTS FOR NOTICE?

Chadly also seeks judicial notice of various things (Dkt. No. 87). Music Together has not provided its views, and nothing in this order turns uniquely on these requests. It is premature to rule on these now. The issues will be addressed at trial with the benefit of the other trial evidence.

#### C. REQUEST TO CORRECT DOCKET?

Counsel jointly move to correct the docket to redact several entries that contain unredacted addresses (Dkt. No. 96). The federal rules do not provide for presumptive sealing of this information. *See* Fed. R. Civ. P. 5.2. Our local rules require a motion to seal. *See* Civil L.R. 79-5. This order construes the motion to correct the docket as a stipulated motion to seal. The standard for subjecting materials to a protective order is good cause; the standard for permanently sealing materials supporting a dispositive motion is compelling reasons. *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F. 3d 1092, 1101–02 (9th Cir. 2016). The motion is **GRANTED** as to the addresses only.

#### D. REDACTED MATERIALS ON THE DOCKET?

Finally, across their filings for their cross-motions, the parties have submitted *redacted* documents without ever submitting *unredacted* copies to permit the district court's unfettered review. Under the rule of completeness, this failure could have been an independent basis to

deny substantive motions seeking summary judgment. All but one of the above substantive motions was denied anyway.

This is not the first time the parties have submitted documents with redactions and without unredacted copies. A prior order pointed out the problem. It is thus a disappointment to see Music Together redact here without timely explanation the same kinds of documents that the prior order had addressed for being redacted without timely explanation (*compare, e.g.*, Dkt. No. 49 (re Dkt. No. 14-9), *with, e.g.*, Dkt. No. 88-2, MT Br. Exh. A-1).

The district court reserves the right to issue further orders respecting the filings that contained unexplained redactions — and of course respecting any fresh filings that yet again ignore the rules.

## CONCLUSION

Every motion seeking partial summary judgment is **DENIED** except two: Music Together's motion for summary judgment against Chadly's claim of "unfair" acts under Section 17200 (Claim IV, in part), which is **GRANTED**, and Music Together's motion for summary judgment against Chadly's claim of intentional infliction of emotional distress (Claim V), which is **GRANTED**. For all claims going to trial, all elements of all claims (and defenses) must be proven at trial. Nothing herein establishes any element for purposes of trial. We proceed to trial on November 10, 2025.

**IT IS SO ORDERED.**

Dated: September 30, 2025.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE